UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Civil Case No. 0:13-cv-62496-LENARD-GOODMAN

TODD BARRON, ADELE FERRARA, DANA COOKE,
GABRIEL IBERTIS, STEVE TROUT, MATTHEW
MCDONOUGH, DAVID KORN, ARNIE NEBRIAGA,
RAHSAAN ASHFORD, TERRY SHAPIRO,
BENJAMIN BARTELL, ANNE STEIMLE, ARTHUR
KAROS, and LARRY ROSENGARTEN, individually
and on behalf of all others similarly situated,

     Plaintiffs,
 v.

SNYDER'S-LANCE, INC., a North Carolina corporation,

     Defendant.

**DEFENDANT'S REPLY IN SUPPORT OF PARTIAL MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT [ECF No. 156]**

MI-484012 v2

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

ARGUMENT ........................................................................................................................... 3

    I.    THE SAC FAILS TO SHOW PLAINTIFFS' STANDING TO ASSERT CLAIMS FOR INJUNCTIVE RELIEF ................................................................. 3

        A.    The ADA Cases Upon Which Plaintiffs Rely Are Inapposite, as the Plaintiffs in Those Cases Adequately Plead the Prospect of Future Injury ....................................................................................................... 4

        B.    This Court Has Already Addressed and Rejected Plaintiffs' Arguments Concerning Broad Standing Under Consumer Protection Statutes ........................................................................................ 6

    II.    PLAINTIFFS' NCUDTPA CLAIM SHOULD BE DISMISSED BECAUSE THEY HAVE FAILED TO PLEAD IN-STATE EFFECTS ON PLAINTIFFS .................................................................................................... 7

CONCLUSION ........................................................................................................................ 9

CERTIFICATE OF SERVICE .............................................................................................. 11

## TABLE OF AUTHORITIES

Page

**CASES**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................5

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 554 (2007) ..........................................................5

*Broussard v. Meineke Discount Muffler Shops, Inc.*, 945 F. Supp. 901 (W.D.N.C. 1996) ..............................................................................................7

*Dye v. Bodacious Food Co.*, No. 14-80627, 2014 U.S. Dist LEXIS 180826 (S.D. Fla. Sept. 9, 2014) ...................................................................................6

*Hardee's Food Sys., Inc. v. Beardmore*, No. 5:96-CV-508, 1997 U.S. Dist. LEXIS 9671 (E.D.N.C. June 6, 1997) ......................................................7

*Henderson v. Gruma Corp.*, No. CV 10-04173, 2011 WL 1362188 (C.D. Cal. Apr. 11, 2011) ...................................................................................6

*Hometown Publ'g, LLC v. Kidsville News!, Inc.*, No. 5:14-CV-76, 2015 U.S. Dist. LEXIS 318 (E.D.N.C. Jan. 5, 2015) ..................................................7

*Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323 (11th Cir. 2013) ....................................................................................................................4, 5

*'In' Porters, S.A. v. Hanes Printables, Inc.*, 663 F. Supp. 494 (M.D.N.C. 1987) ........................................................................................8, 9

*In re ConAgra Foods, Inc.*, 302 F.R.D. 537 (C.D. Cal. 2014) ..............................................6

*In re Genetically Modified Rice Litig.*, 666 F. Supp. 2d 1004 (E.D. Mo. 2009) ......................................................................................................8

*In re Starlink Corn Prods. Liab. Litig.*, 212 F. Supp. 2d 828 (N.D. Ill. 2002) ...............................................................................................8

*Jacobs v. Cent. Transp., Inc.*, 891 F. Supp. 1088 (E.D.N.C. 1995) ............................. 7-8

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .......................................................5, 6

*Mason v. Nature's Innovation, Inc.*, No. 12cv3019, 2013 WL 1969957 (S.D. Cal. May 13, 2013) ......................................................................6

*Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523 (N.D. Cal. 2012) .....................................................................................................................6

*Sara Lee Corp. v. Carter*, 351 N.C. 27 (1999) .....................................................................8

## TABLE OF AUTHORITIES

**Page**

*Verona v. U.S. Bancorp*, No. 7:09-CV-057, 2011 U.S. Dist. LEXIS
    33160 (E.D.N.C. Mar. 29, 2011) ............................................................................................7

**OTHER AUTHORITIES**

N.C. Gen. Stat. § 75-1 *et seq.*..........................................................................................................1

42 U.S.C. §§ 12111-12213 .............................................................................................................3

1 William B. Rubenstein, et al., Newburg on Class Actions § 2.7
    (5th ed. 2011) ...........................................................................................................................3

42 U.S.C. § 12188(a) ......................................................................................................................3

Defendant Snyder's-Lance, Inc. ("Snyder's-Lance" or "Defendant") hereby submits its Reply to Plaintiffs' Opposition to Defendant's Motion to Dismiss [ECF No. 159] ("Opposition" or "Opp.") and in support of Defendant's Partial Motion to Dismiss Plaintiffs' Second Amended Class Action Complaint [ECF No. 156] ("Motion" or "Mot."). For the reasons set forth herein and in the Motion, those portions of Plaintiffs' Second Amended Class Action Complaint [ECF No. 153] (the "Second Amended Complaint" or "SAC"), which are the subject of the Motion, should be dismissed.[1] Specifically, Snyder's-Lance is entitled to dismissal of the following claims:

(1) Plaintiffs' claims for injunctive relief (included in Counts I – IV and Prayer for Relief); and

(2) Plaintiffs' claim for violation of the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1 *et seq.* ("NCUDTPA") (Count I).

Further, inasmuch as these claims have previously been dismissed (*see* Mar. 20, 2015 Court Order 23-26, 31-34 [ECF No. 147] (hereinafter, "Order")), the Court's dismissal of these re-pleaded claims should be with prejudice.

## INTRODUCTION

In the Order, this Court dismissed the injunctive claims alleged in Plaintiffs' First Amended Class Action Complaint ("First Amended Complaint" or "FAC"), holding that "a consumer fraud Plaintiff seeking to enjoin a manufacturer from deceptively labeling a product

---

[1] Plaintiffs note that Snyder's-Lance only moved to dismiss "discrete parts" of the Second Amended Complaint and attribute this to Defendants "recognizing the overall strength of Plaintiffs' allegations." (Opp. 1.) Nothing could be farther from the truth – Snyder's-Lance believes, for the reasons set forth in its Motion to Dismiss Amended Class Action Complaint [ECF No. 38], that this entire case and all claims asserted by Plaintiffs are without any merit whatsoever and ought to have been dismissed. Snyder's-Lance recognizes that the Court ruled on that motion in its Order. Plaintiffs, by essentially re-filing their claim for injunctive relief and their claim under NCUDTPA, seemingly have failed to heed the Court's ruling.

cannot establish Article III standing if she is not likely to purchase the 'noncompliant' product in the future." (Order 25.) In their Second Amended Complaint, Plaintiffs do not allege that they will or even that they are likely to purchase "noncompliant" snack products manufactured by Snyder's-Lance ("Products") in the future – that is, Plaintiffs do not allege that they will or are likely to purchase Products that are *still* (allegedly) falsely labeled as "natural" even though they are manufactured using ingredients that derive from genetically modified crops (GMOs). Rather, Plaintiffs merely allege that they are "still interested in purchasing the Products and intend[] to purchase the Products in the future *based upon the assumption that Defendant will have removed the non-natural ingredients*" therefrom. (SAC ¶¶ 19, 26, 33, 41.) Of course, assuming that Snyder's-Lance did indeed remove the allegedly "non-natural" ingredients from the Products, the Products would no longer be "noncompliant"; indeed, and to the contrary, under Plaintiffs' theory of the case they would be fully "compliant" with the "natural" claim on their labels. Accordingly, Plaintiffs still have not solved the pleading issue that led this Court to dismiss their injunctive claims in the first place.

Plaintiffs also have failed to solve the pleading issue that prompted this Court to dismiss their NCUDTPA claim. This Court dismissed that claim based upon Plaintiffs' failure to plead an effect upon them in North Carolina, or upon trade or commerce. (Order 33.) Plaintiffs in the SAC now plead an effect upon trade or commerce: "Defendant and its conduct has a substantial in-state effect on North Carolina trade and commerce." (SAC ¶ 111.) Plaintiffs, however, completely ignore the Court's holding that they must plead an in-state effect upon *them*. (Order 32.)

Because Plaintiffs failed to adequately re-plead their injunctive claims and their NCUDTPA claim, these claims should be dismissed once again, and this time with prejudice.

2

**ARGUMENT**

I.  **THE SAC FAILS TO SHOW PLAINTIFFS' STANDING TO ASSERT CLAIMS FOR INJUNCTIVE RELIEF**

Plaintiffs make essentially two points regarding the continued viability of their injunctive claims. Neither has any validity whatsoever.[2]

First, relying on cases decided under the Americans With Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. §§ 12111-12213, and specifically Title III thereof, Plaintiffs assert that they need not engage in the "futile gesture of re-purchasing Products they now know are mis-labeled." (Opp. 2.)[3] Plaintiffs' argument ignores this Court's directive to the contrary. (*See* Order 25, where this Court held that a "consumer fraud Plaintiff" must show the likelihood of purchasing "noncompliant" products in the future in order to have standing to seek injunctive relief.)

Second, Plaintiffs assert that construing standing so "narrowly" (Opp. 9) would gut the ability of consumer fraud plaintiffs to obtain injunctive relief. This merely re-hashes the arguments Plaintiffs raised in response to Defendant's original motion to dismiss (*see* Plaintiffs' Opposition to Defendant's Motion to Dismiss the Amended Class Action Complaint [ECF No. 44], at 12-13) – arguments that this Court emphatically rejected in the Order. (*See* Order 24.)

---

[2] In a footnote (*see* Opp. 3 n.3), Plaintiffs also state that they seek injunctive relief on behalf of a class of Product purchasers, but this does not provide them with standing to obtain such relief. As one of the leading commentators on class action jurisprudence puts it, "When a named plaintiff in a class suit attempts to obtain an injunction due to the likelihood of future injury, that injury must be suffered personally by the named plaintiff – potential future injuries to class members do not provide standing for the named plaintiff to seek injunctive relief." 1 William B. Rubenstein, et al., Newburg on Class Actions § 2.7 (5th ed. 2011).

[3] Plaintiffs fail to note that this "futile gesture" standard is written into the ADA. The statute itself states that "[n]othing in this section shall require a person with a disability to engage in a futile gesture if such person has actual notice that a person or organization covered by this subchapter [Title III] does not intend to comply with its provisions." 42 U.S.C. § 12188(a). The consumer protection statutes upon which Plaintiffs sue in this case do not contain any such expansive standing provisions. Further, the only remedy under Title III of the ADA is an injunction (*id.*); here, by contrast, Plaintiffs are seeking damages representing the "price premium" they allege they paid for the Products they allegedly purchased (Order 21-22).

3

Accordingly, Plaintiffs do not have standing to seek injunctive relief, and their claims for such relief must be dismissed with prejudice.

### A. The ADA Cases Upon Which Plaintiffs Rely Are Inapposite, as the Plaintiffs in Those Cases Adequately Plead the Prospect of Future Injury

In dismissing Plaintiffs' injunctive claims in the Order, this Court expressly relied by analogy upon ADA cases in holding that a consumer fraud plaintiff had to express an intention to purchase "noncompliant" products in order to have standing to assert claims for injunctive relief. (Order 25-26.) Plaintiffs rely principally upon an ADA case cited but not discussed in detail by the Court, *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323 (11th Cir. 2013). Plaintiffs completely misapprehend the import of *Marod Supermarkets*, as well as the import of the other ADA cases they cite.

First, the facts in *Marod Supermarkets* show that plaintiff, who was a "tester" of public facilities to see if they were ADA-compliant, did indeed intend to return to the "noncompliant" facility, if for no other reason than "to determine whether the property … [had] been made ADA compliant." 733 F.3d at 1326. The Eleventh Circuit held that plaintiff's "tester" motive did not negate his standing to pursue an ADA claim. *Id*. at 1332-34. The Court also noted that plaintiff had shown sufficient prospect of future injury. It found that the "likelihood of Houston suffering future injury is not contingent upon events that are speculative or beyond his control." *Id*. at 1337. The factors upon which the Court relied included the undisputed facts that plaintiff had previously shopped at the facility, which was located in the next county from where he lived and was only 1.8 miles from his lawyer's office, which he regularly visited in connection with his "tester" role. *Id*. at 1327. The Court concluded that "under the totality of the facts here, the

4

threat of future injury to Houston is not merely 'conjectural' or 'hypothetical.' Instead, it is 'real and immediate.'" *Id*. at 1337.

Finally, the Court noted that different facts – for example, if plaintiff lived "hundreds of miles away from the store with no particular reason to return" – might lead to a different conclusion. *Id*. at 1336. In this connection, the Court, citing to the Supreme Court's seminal case of *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992), noted that "immediacy is an 'elastic concept,'" *Marod Supermarkets*, 733 F.3d at 1340, which in this context meant "reasonably fixed and specific in time and not too far off," *id*. (quoting *ACLU of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1193-94 (11th Cir. 2009). But while "immediacy" may be elastic, Plaintiffs stretch the concept well beyond the breaking point, because it is completely implausible under the pleading standards of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554 (2007) to suggest that these Plaintiffs will *ever* purchase noncompliant Products, now that they "know" that the Products (allegedly) contain GMOs.

In *Marod Supermarkets*, the Eleventh Circuit found that "[t]here is no indication in the record that the alleged architectural barriers in the Presidente Supermarket have been remedied. As a result, there is a 100 percent likelihood that Plaintiff Houston will suffer the alleged injury again when he returns to the store." 733 F.3d at 1337. In this case, by contrast, the only 100% likelihood is that Plaintiffs will *never* purchase Products knowing that they contain GMOs. As such, they have no standing to assert a claim seeking injunctive relief to redress the alleged mislabeling of the Products.

### B. This Court Has Already Addressed and Rejected Plaintiffs' Arguments Concerning Broad Standing Under Consumer Protection Statutes

Plaintiffs assert that the consumer protection statutes under which they make their claims provide for an injunctive remedy (Opp. 13), and that these statutory claims will be gutted by a too narrow construction of their standing to seek injunctive relief (*id*. 9-10). Plaintiffs rely on cases like *Henderson v. Gruma Corp.*, No. CV 10-04173, 2011 WL 1362188 (C.D. Cal. Apr. 11, 2011) and *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523 (N.D. Cal. 2012) to support their argument. These cases were extensively reviewed and expressly rejected by the Courts in *In re ConAgra Foods, Inc.*, 302 F.R.D. 537 (C.D. Cal. 2014) and *Mason v. Nature's Innovation, Inc.*, No. 12cv3019, 2013 WL 1969957 (S.D. Cal. May 13, 2013), both of which, in turn, this Court relied upon in rejecting Plaintiffs' injunctive claims in the FAC. (Order 24.) As the Court in *ConAgra*, citing *Mason*, held: "The court agrees with Judge Moskowitz that Article III's standing requirements take precedence over enforcement of state consumer protection laws." 302 F.R.D. at 575. In effect, Plaintiffs are asking this Court to reconsider its earlier rejection of their arguments. There is no reason for this Court to do so.

Federal courts are courts of limited jurisdiction, and one of the Constitutional constraints upon the judicial power of the United States is the doctrine of standing. *Lujan*, 504 U.S. at 560. The "core" of that doctrine "is an essential and unchanging part of the case-or-controversy requirement of Article III." *Id*. None of the cases cited by Plaintiffs pay deference to the constitutionally limited jurisdiction of the federal courts. Instead, as in (for example) *Dye v. Bodacious Food Co.*, No. 14-80627, 2014 U.S. Dist LEXIS 180826, at *9-10 (S.D. Fla. Sept. 9, 2014), they rely upon the broad grant of relief available under the Florida Deceptive and Unfair Trade Practices Act or other states' analogous statutes. (Opp. 11-12.) Were Plaintiffs suing in state court, the availability of such broad relief perhaps might apply. But Plaintiffs instead

6

invoked the jurisdiction of this Court, not a state court of general jurisdiction, and are thus constrained by Article III's standing requirements. Under those requirements, they simply have no standing under the facts of this case and the allegations they have pled to pursue injunctive relief. Their claims for such relief should be dismissed with prejudice.

## II.     PLAINTIFFS' NCUDTPA CLAIM SHOULD BE DISMISSED BECAUSE THEY HAVE FAILED TO PLEAD IN-STATE EFFECTS ON PLAINTIFFS

Plaintiffs fail to identify any substantial in-state effect they have suffered as a result of Snyder's-Lance's allegedly unfair and deceptive conduct. They nonetheless attempt to save their NCUDTPA claim from a second dismissal by erroneously arguing that they are not required to plead such effect as long as they plead that Snyder's-Lance's in-state conduct harmed them. However, the cases upon which Plaintiffs rely for this point are inapposite. In each of those cases, the plaintiff had ongoing business contacts in North Carolina with the defendant. *See Hometown Publ'g, LLC v. Kidsville News!, Inc.*, No. 5:14-CV-76, 2015 U.S. Dist. LEXIS 318, at *9 (E.D.N.C. Jan. 5, 2015) (contract between parties executed and performed in North Carolina); *Verona v. U.S. Bancorp*, No. 7:09-CV-057, 2011 WL 1252935, at *1=5, 11-15 (E.D.N.C. Mar. 29, 2011) (numerous contractual and business interactions between the plaintiff and defendant); *Hardee's Food Sys., Inc. v. Beardmore*, No. 5:96-CV-508, 1997 WL 33825259, at *1 (E.D.N.C. June 6, 1997) ("dispute aris[ing] out of fourteen license agreements between" the parties); *Broussard v. Meineke Discount Muffler Shops, Inc.*, 945 F. Supp. 901, 904-05, 917-18 (W.D.N.C. 1996) ("ongoing business transactions between the [parties] that occurred in North Carolina due to their franchisor-franchisee relationship" and injury to the plaintiffs in North Carolina), *rev'd*, 155 F.3d 331 (4th Cir. 1998); *Jacobs v. Cent. Transp., Inc.*, 891 F. Supp. 1088, 1111 (E.D.N.C. 1995) (equipment leases between the parties managed in North Carolina), *aff'd*

*in part and rev'd in part*, 83 F.3d 415 (4th Cir. 1996).  These ongoing contacts in North Carolina made it appropriate to offer the plaintiffs protection in the State.  *See Sara Lee Corp. v. Carter*, 519 S.E.2d 308, 311 (N.C. 1999) (noting that the purpose of the NCUDTPA is to maintain ethical dealings "between persons engaged in business . . . *within this State*" (citation and quotations omitted) (emphasis added)).  Where a foreign plaintiff has no such contact with the State, these cases are inapplicable, and the plaintiff must allege a substantial in-state effect on the plaintiff.

Here, Plaintiffs do not allege any ongoing contact with Snyder's-Lance in North Carolina.  Instead, they merely allege that Snyder's-Lance is headquartered and has employees and business units in North Carolina.  (*See* SAC ¶ 110.)  Plaintiffs cite no case holding that allegations that a defendant and its employees are located in North Carolina, without more, are sufficient to allow a foreign plaintiff to state a claim under the NCUDTPA.

To the contrary, when NCUDTPA claims are based on distribution or mislabeling of food products, rather than based on ongoing business contacts with North Carolina, courts have routinely applied *'In' Porters, S.A. v. Hanes Printables, Inc.*, 663 F. Supp. 494 (M.D.N.C. 1987) and required plaintiffs to allege an in-state effect, even when the defendants made decisions in North Carolina.  *See, e.g.*, *In re Genetically Modified Rice Litig.*, 666 F. Supp. 2d 1004, 1017 (E.D. Mo. 2009) (applying *'In' Porters* when the "plaintiffs [were] not suing based on contracts with [the defendant], and although some of [the defendant's] decision-making occurred in North Carolina, the claims of plaintiffs cannot be said to arise mainly from those North Carolina activities"); *In re Starlink Corn Prods. Liab. Litig.*, 212 F. Supp. 2d 828, 850-51 (N.D. Ill. 2002).

Here, where Plaintiffs have alleged no ongoing business contacts with North Carolina, *'In' Porters* is dispositive and Plaintiffs must allege a substantial, in-state effect to state a claim.[4]

Even if Plaintiffs were correct that they must plead only that their injuries resulted from in-state conduct by Snyder's-Lance, Plaintiffs have failed to state a claim under the NCUDTPA.

## CONCLUSION

Accordingly, and for the reasons set forth in its Motion, Snyder's-Lance respectfully requests that the Court dismiss, with prejudice, those portions of the Second Amended Complaint that are the subject of the Motion.


Dated: Miami, Florida
       May 18, 2015

Respectfully submitted,

*/s/ April Boyer*
April Boyer
Florida Bar No. 168335
Olivia Kelman
Florida Bar No. 105286
K&L GATES LLP
Southeast Financial Center
200 South Biscayne Boulevard, Suite 3900
Miami, FL 33131
Email: april.boyer@klgates.com
Email: olivia.kelman@klgates.com
Telephone: 305.539.3300
Facsimile:  305.358.7095

---

[4] Though Plaintiffs argue that the "lack of a geographic limitation in the text of the NCUDTPA [since 1977] is significant," *'In' Porters* clearly continues to apply after the 1977 amendments.  (*See* Opp. 15.)  *'In' Porters* itself was decided ten years after the 1977 amendments and has been followed by numerous courts since then.  *See In re Parmalat Sec. Litig.*, 383 F. Supp. 2d 587, 603 & n.80 (S.D.N.Y. 2005) (noting that "the overwhelming majority of federal district courts" have followed *'In' Porters* and collecting cases).

        and
Matthew G. Ball, admitted *pro hac vice*
matthew.ball@klgates.com
**K&L GATES LLP**
4 Embarcadero Center, Suite 1200
San Francisco, CA 94111
Telephone: 412.249.1014
Facsimile: 412.882.8220
        and
Kiran H. Mehta, admitted *pro hac vice*
kiran.mehta@troutmansanders.com
**TROUTMAN SANDERS LLP**
301 South College Street, Suite 3400
Charlotte, NC 28202
Telephone:  704.998.4072
Facsimile:  704.998.4051

*Counsel for Defendant Snyder's-Lance, Inc.*


### CERTIFICATE OF SERVICE

The undersigned certifies that on May 18, 2015, the foregoing **DEFENDANT'S REPLY IN SUPPORT OF PARTIAL MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT** was filed with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel or parties of record on the service list set forth below.

*/s/April Boyer*
April Boyer

**SERVICE LIST**
Case No. 0:13-cv-62496- LENARD/GOODMAN
United States District Court, Southern District of Florida

Howard W. Rubinstein
The Law Offices of Howard W.
  Rubinstein, P.A.
3507 Kyoto Gardens Drive, Suite 200
Palm Beach Gardens, FL 33401
Email: howardr@pdq.net
Telephone: 832.715.2788
Facsimile:  561.688.0630

Michael Thomas Fraser
The Law Offices of Howard W.
  Rubinstein, P.A.
One Embarcadero Center, Suite 500
San Francisco, CA  94111
Email: mfraser@hwrlawoffice.com
Telephone: 800.436.6437
Facsimile:  561.688.0630

Michael R. Reese, admitted *pro hac vice*
George V. Granade, II, admitted *pro hac vice*
Reese LLP
875 Avenue of the Americas, 18th Floor
New York, NY  10001
Email: mreese@reeserichman.com
Email: ggranade@reeserichman.com
Telephone: 212.646.0500
Facsimile:  212.253.4272

Melissa W. Wolchansky, admitted *pro hac vice*
Halunen Law
1650 IDS Center
80 South Eight Street
Minneapolis, MN 55402
Email: wolchansky@halunenlaw.com
Telephone: 612.605.4098

April Boyer
Florida Bar No. 168335
Jonathan B. Morton
Florida Bar No. 956872
Olivia Kelman
Florida Bar No. 105286
K&L GATES LLP
Southeast Financial Center
200 South Biscayne Boulevard, Suite 3900
Miami, FL 33131
Email: april.boyer@klgates.com
Email: olivia.kelman@klgates.com
Email: jonathan.morton@klgates.com
Telephone: 305.539.3300
Facsimile:  305.358.7095

Matthew G. Ball, admitted *pro hac vice*
K&L GATES LLP
4 Embarcadero Center, Suite 1200
San Francisco, CA 94111
Email: matthew.ball@klgates.com
Email: rosalind.cook@klgates.com
Telephone: 412.249.1014
Facsimile:  412.882.8220

Kiran H. Mehta, admitted *pro hac vice*
Troutman Sanders LLP
301 South College Street, Suite 3400
Charlotte, NC 28202
Email:  kiran.mehta@troutmansanders.com
Telephone:  704.998.4072
Facsimile:  704.998.4051

Joshua H. Eggnatz
Michael J. Pascucci
Eggnatz, Lopatin & Pascucci, LLP
54000 S. University Drive, Suite 413
Davie, FL 33328
Email: jeggnatz@ELPLawyers.com
Telephone: 954.889.3359
Facsimile: 954.889.5913

Benjamin M. Lopatin, admitted *pro hac vice*
Eggnatz, Lopatin & Pascucci, LLP
580 California Street, Suite 1200
San Francisco, CA 94104
Email: blopatin@ELPLawyers.com
Telephone: 415.753.9219
Facsimile: 415.520.2262

12