Joshua H. Eggnatz
Florida Bar No. 0067926
**EGGNATZ, LOPATIN & PASCUCCI, LLP**
54000 S. University Drive, Suite 413
Davie, Florida 33328
Email: jeggnatz@ELPLawyers.com
Telephone: 954.889.3359
Facsimile: 954.889.5913

Michael R. Reese (admitted *pro hac vice*)
**REESE LLP**
100 West 93rd Street, 16th Floor
New York, New York 10025
Email: mreese@reesellp.com
Telephone: 212.646.0500
Facsimile:  212.253.4272

Melissa W. Wolchansky (admitted *pro hac vice*)
**HALUNEN LAW**
1650 IDS Center
80 South Eight Street
Minneapolis, Minnesota 55402
Email: wolchansky@halunenlaw.com
Telephone: 612.605.4098
Facsimile: 612-605-4099

*Counsel for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 0:13-cv-62496-LENARD/GOODMAN**

| | |
|---|---|
| TODD BARRON, et al., individually and on behalf of all others similarly situated, <br><br>                *Plaintiffs,* <br> v. <br><br> SNYDER'S-LANCE, INC., <br>                *Defendant.* | **UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND FOR LEAVE TO FILE THIRD AMENDED COMPLAINT FOR SETTLEMENT PURPOSES, AND INCORPORATED <u>MEMORANDUM OF LAW</u>** |

i

# TABLE OF CONTENTS

PAGE

I.    INTRODUCTION ......................................................................................3
       A.  History of the Litigation................................................................3
       B.  Summary of the Settlement Terms ...............................................4
II.   HISTORY OF THE LITIGATION ...........................................................5
III.  SETTLEMENT TERMS ...........................................................................6
       A.  The Injunctive Relief Component.................................................6
       B.  The Monetary Relief Component ..................................................6
       C.  Class Claims Administration, Attorney's Fees, and the
           Proposed Notice Plan...................................................................7
IV.  THE PROPOSED SETTLEMENT MEETS THE CRITERIA FOR
    PRELIMINARY APPROVAL ..................................................................8
       A.  The Standard for Preliminary Approval .......................................8
       B.  The Proposed Settlement Resulted from Serious, Informed, and
           Non-Collusive Arm's Length Negotiations .................................10
       C.  The Proposed Settlement is Fair to Both the Plaintiff and Class Members...11
       D.  The Terms of the Settlement Compel Preliminary Approval .......................11
V.   THE CLASS SHOULD BE CONDITIONALLY CERTIFIED...............................14
       A.  The Settlement Class Satisfies Federal Rule of Civil Procedure 23(a) ........14
          1.  Numerosity.......................................................................14
          2.  Commonality.....................................................................14
          3.  Typicality ..........................................................................14
          4.  Adequacy of Representation ..............................................15
       B.  The Settlement Class Should Be Preliminary Approved Under the Federal
           Rules of Civil Procedure 23(b)(3).................................................15
          1.  Common Questions Predominate Over Individual Issues .....................16
          2.  A Class Action is the Superior Method to Settle this Controversy.........16
VI.  THE PROPOSED CLASS NOTICE PROGRAM IS APPROPRIATE AND CLASS
    NOTICE SHOULD BE APPROVED ...................................................17
VII. THE PROPOSED SCHEDULE OF EVENTS .......................................18
VIII. LEAVE TO FILE THIRD AMENDED COMPLAINT SHOULD BE
    GRANTED ..............................................................................19
IX.  CONCLUSION......................................................................20

## **TABLE OF AUTHORITIES**

### **CASES**

*Access Now, Inc. v. Claire's Stores, Inc.*,
   No. 00-14017-CIV, 2002 WL 1162422 (S.D. Fla. May 7, 2002) ...................................... 9

*Adams v. Inter-Con Sec. Sys., Inc.*,
   No. C-06-5428 MHP, 2007 WL 3225466 (N.D. Cal. Oct. 30, 2007) ............................. 11

*Amchem Prods., Inc. v. Windsor* ,
   521 U.S. 591 (1997) ................................................................................ 15, 16

*Appleyard v. Wallace* ,
   754 F.2d 955 (11th Cir. 1985). ....................................................................... 15

*Ass'n for Disabled Ams. Inc. v. Amoco Oil Co.*,
   21 F.R.D. 457 (S.D. Fla. 2002). ...................................................................... 10

*Bennett v. Behring Corp.*,
   737 F.2d 982 (11th Cir. 1984) ...................................................................... 8, 9 11

*Bonner v. City of Prichard*,
   661 F.2d 1206 (11th Cir. 1981) ...................................................................... 15

*Busby v. JRHBW Realty, Inc.*,
   513 F.3d 1314 (11th Cir. 2008) ...................................................................... 16

*Castillo v. Gen. Motors Corp.*,
   No. 07-2142 WBS GGH, 2008 WL 8585691 (E.D. Cal. Sept. 8, 2008) .........................19

*Cotton v. Hinton*
   559 F.2d 1326 (5th Cir. 1977)............................................................... 9, 10, 13

*Deposit Guaranty Nat'l Bank v. Roper*
   445 U.S. 326 (1980) ...................................................................................16

*Eisen v. Carlisle & Jacquelin*
   417 U.S. 156 (1974) .................................................................................... 17

*Fabricant v. Sears Roebuck*,
   202 F.R.D. 310 (S.D. Fla. 2001) ..................................................................... 16

*Francis v. Mead Johnson & Co.*,

No. 1:10-cv-701-JLK (D. Colo.)..................................................................... 7, 11

*Fresco v. Auto Data Direct, Inc.*,
    No. 03-61063, 2007 U.S. Dist. LEXIS 37863 (S.D. Fla. May 11, 2007) ......................... 8

*Fresco v. Auto. Directions, Inc.*,
No. 03-61063, 2009 U.S. Dist. LEXIS 125233 (S.D. Fla. Jan. 16, 2009) ...........................17

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ................................................................... 13

*In re Amerifirst Sec. Litig.*,
    139 F.R.D. 423 (S.D. Fla. 1991) ............................................................... 14

*In re Compact Disc. Minimum Advertised Price Antitrust Litig.*,
    216 F.R.D. 197 (D. Me. 2003) ................................................................. 17

*In re Corrugated Container Antitrust Litig.*,
    643 F.2d 195 (5th Cir. 1981)..................................................................... 9

*In re Disposable Contact Lens Antitrust Litig.*,
    170 F.R.D. 524 (M.D. Fla. 1996)............................................................... 14

*In re Employee Benefit Plans Sec. Litig.*,
    No. 3-92-708, 1993 WL 330595 (D. Minn. June 2, 1993).............................................. 10

*In re Indep. Energy Holdings PLC*,
    No. 00 Civ. 6689(SAS), 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) ...................... 11

*In re Nissan Motor Corp. Antitrust Litig.*,
    552 F. 2d 1088 (5th Cir. 1977) ................................................................ 16

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
    148 F.3d 283, 314-315 (3d Cir. 1998)........................................................... 13

*In re U.S. Oil & Gas Litig.*,
    967 F.2d 489 (11th Cir. 1992) ................................................................. 13

*In re Warner Commc'ns Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985)............................................................... 10

*Kirkpatrick v. J.C. Bradford & Co.*,
    827 F.2d 718 (11th Cir. 1987) ................................................................. 15

iv

*Klay v. Humana,*
   382 F.3d 1241 (11th Cir. 2004) ....................................................................... 16

*Lipuma v. American Express Co.,*
   406 F. Supp. 2d 1298, 1319 (S.D. Fla. 2005) ................................................ 13

*Manchaca v. Chater,*
   927 F. Supp. 962 (E.D. Tex. 1996) ................................................................. 10

*Milstein v. Huck,*
   600 F. Supp. 254 (E.D.N.Y 1984) .................................................................. 12

*Mullane v. Cent. Hanover Bank & Trust Co.,*
   339 U.S. 306 (1950) ......................................................................................... 17

*Perez v. Asurion Corp.,*
   501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) ................................................. 11

*Phillips Petroleum Co. v. Shutts ,*
   472 U.S. 797 (1985) ......................................................................................... 16

*Pinto v. Princess Cruise Lines,*
   513 F. Supp. 2d 1334 (S.D. Fla. 2007) ........................................................... 12

*Rutstein v. Avis Rent-A-Car Sys.,*
   211 F.3d 1228 (11th Cir. 2000) ....................................................................... 15

*Slater v. Energy Services Group Intern., Inc.,*
   No. 09-13794, 2011 WL 782023 (11th Cir. (Fla.) March 8, 2011) .................... 14

*Smith v. WM. Wrigley Jr. Co.,*
No. 09-60646-CIV, 2010  W 2401149  (S.D.  Fla.  June  15, 2010) ......................... 9, 11, 17

*Vega v. T-Mobile USA, Inc.,*
   564 F.3d 1256 (11th Cir. 2009) ....................................................................... 14

*Weiner v. Dannon Co., Inc.,*
   255 F.R.D. 658 (C.D. Cal. 2009) ..................................................................... 16

*Williams v. Mohawk Indus., Inc.,*
   568 F.3d 1350 (11th Cir. 2009) ....................................................................... 14

*Young v. Katz,*

v

447 F.2d 431 (5th Cir. 1971) ............................................................................................. 9

**OTHER AUTHORITIES**

*Annotated Manual for Complex Litigation* (4th ed. 2008) ................................................. 8, 9

*Newberg on Class Actions* (4th ed. 2002) ....................................................................8, 10

**RULES**

Fed. R. Civ. P. 15(a)(2) .......................................................................................................19
Fed. R. Civ. P. 23(a) ............................................................................................... 14, 15, 18
Fed. R. Civ. P. 23(b)(3)............................................................................................ 15, 16, 18

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs Adele Ferrera, Dana Cooke, Rahsaan Ashford and Anne Steimle (collectively, "Plaintiffs"), along with the other to be joined Plaintiffs for settlement purposes,[1] with the consent of Snyder's-Lance, Inc. ("Defendant"), hereby move for an Order:

1. Lifting the stay of this action to allow the granting of the relief sought by this motion.

2. Allowing the filing of the Third Amended Complaint for settlement purposes, that is attached hereto as **Exhibit A.**

3. Conditionally certifying the following class identified in the Third Amended Complaint for settlement purposes only: All Persons who, for personal or household use, purchased Snyder's-Lance's Snyder's of Hanover® Pretzels, Snyder's of Hanover® Chips, Cape Cod® Potato Chips, Eatsmart Naturals® Snacks, Padrino's® Chips and Snack Factory Pretzel Crisps® products bearing, or advertised or marketed with, a Natural Label, in the United States from November 13, 2007 through and including the "Notice Date," defined in the Stipulation of Settlement as the "date on which the Claims Administrator shall commence the Notice Plan." Excluded from the Settlement Class are: (a) all Persons who purchased or acquired the Products for resale; (b) Snyder's-Lance and its employees, principals, affiliated entities, legal representatives, successors, and assigns; (c) any Person who files a valid, timely Request for Exclusion; (d) federal, state, and local governments (including all agencies and subdivisions thereof, but excluding employees thereof); and (e) the judges to whom the Snyder's-Lance Actions are assigned and any members of their immediate families.

4. Conditionally designating Adele Ferrera, Dana Cooke, Rahsaan Ashford, Anne Steimle, Matthew McDonough, Steve Trout, Terry Shapiro, Benjamin Bartell, Arthur Karos, Larry Rosengarten, David Korn, Tina Mary Brunello, and Joshua Seidman as the representatives of the Class. The above Class Representatives are comprised of the named Plaintiffs in the Third Amended Complaint, as well as the three other related actions that have joined in the Settlement reached herein. Those actions are: *McDonough v. Snyder's-Lance, Inc.*, Case No. 15-cv-01751 (currently pending in the Eastern District of New York); *Korn, et al.*, Case No. 3:15-cv-02593

---

[1]    Plaintiffs are filing an Unopposed Motion for Leave File Third Amended Complaint for Settlement purposes contemporaneously with this Motion, to include the following individuals as Class Representative Plaintiffs in this action: Steve Trout, Terry Shapiro, Benjamin Bartell, Arthur Karos, Larry Rosengarten, and Joshua Seidman.

(currently pending in the North District of California); and *Seidman v. Snack Factory, LLC*,[2] Case No. 14-cv-62547 (previous dismissed). (Collectively referred to "Snyder's Actions.")

5.    Appointing Joshua H. Eggnatz of Eggnatz, Lopatin & Pascucci, LLP; Michael R. Reese of Reese LLP; and Melissa W. Wolchansky of Halunen Law, as Class Counsel, all of which all have abundant experience in complex consumer class actions, especially in the area of food labeling;

6.    Preliminarily approving the terms of the Settlement as set forth in the Stipulation of Settlement, which is attached hereto as **Exhibit B**;

7.    Approving the forms of notice and the methods of providing notice of the Settlement to the Class as set forth in the Stipulation of Settlement and the exhibits thereto and directing that said forms of notice be provided to Class Members in that manner;

8.    Scheduling a Final Approval Hearing at which the request for final approval of the proposed Settlement, Plaintiffs' Counsel's application for an award of attorneys' fees, Class Representative Service Award, and expenses, and the entry of the Final Judgment and Order will be considered.

9.    As set forth in the Stipulation of Settlement and Exhibits in support thereof, plaintiffs suggest the following event schedule leading to the claims submission deadline, predicated on preliminary approval by the Court on or before September 28, 2015:

| Proposed Date[3] | Event |
|---|---|
| October 19, 2015 | Publication notice begins (21 days after preliminary approval) |
| December 30, 2015 | Deadline for opt-outs and objections (30 days before Final Approval Hearing) |
| January 29, 2016 | Final Approval Hearing (100 days after preliminary approval) |

2.    Snack Factory, LLC is a wholly owned subsidiary of Snyder's Lance, LLC.

3.    Pursuant to the Parties' Stipulation, the actual deadlines for the events listed in this schedule will vary depending upon the date on which preliminary approval is granted (if it is granted) and the date that the Court sets for the Final Approval Hearing.

2

February 12, 2016        Deadline for submitting claims (14
days after Final Approval Hearing)

This motion is based on the Stipulation of Settlement and Exhibits in support thereof and upon such other matters as may be presented at the hearing. A proposed Order Granting Preliminary Approval and Leave to File Third Amended Complaint, is attached hereto as **Exhibit C.**

## MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiffs[4] submit this Memorandum in support of their Unopposed Motion for Preliminary Approval of Class Action Settlement and for entry of the [Proposed] Order Granting Preliminary Approval of Class Action Settlement. The terms of the proposed settlement ("Settlement") are fully set forth in the Stipulation of Class Action Settlement attached as Exhibit B. ("Stipulation of Settlement" or "Stipulation").

## I.  INTRODUCTION

### A.  History of the Litigation

Without objection by Snyder's-Lance, Inc. ("Defendant"), Plaintiffs respectfully request that the Court grant preliminary approval of the proposed Settlement of this action in which Plaintiffs allege that the covered Products' "All Natural" labeling and advertising was false and misleading.[5]

The instant action is the first filed of the four related Snyder's Actions against Defendant. The Parties to the actions engaged in extensive, adversarial and hard-fought motion practice.

The settlement was achieved after numerous contested motions (including two motions to dismiss; class certification; and summary judgment); extensive discovery - including voluminous document production and 13 depositions (including experts).

---

4.    For settlement purposes, the term "Plaintiffs" shall include all proposed Class Representatives, including: Adele Ferrera, Dana Cooke, Rahsaan Ashford, Anne Steimle Matthew McDonough, Steve Trout, Terry Shapiro, Benjamin Bartell, Arthur Karos, Larry Rosengarten, David Korn, Tina Mary Brunello, and Joshua Seidman.

5.    All capitalized terms not defined herein shall have the same meanings set forth in the Stipulation.

This settlement was also achieved by the aide of the negotiation skills of the court-appointed mediator Rodney A. Max.

Specifically, on March 13, 2015, the Parties attended a full day mediation conference with Rodney A. Max. *See* Mediator's Report dated March 16, 2015 [DE 139]. Although a settlement was not reached at that time, the Parties continued to engage in meaningful settlement discussions. The Parties attended a second settlement conference with Mr. Max on Friday, April 3, 2015. The Parties did not reach a settlement at the second settlement conference either, but they continued to engage in on-going post mediation discussions, including with the assistance of Mr. Max, while at the same time vigorously litigating their claims. *See* Mediator's Report dated June 8, 2015 [DE 161]. As a result of the Parties' on-going and arms' length negotiations, the Parties have finally negotiated a full settlement of the Snyder's Actions, as evidenced by the Stipulation of Settlement.

**B.    Summary of Terms of the Settlement**

Plaintiffs allege that Defendant improperly labeled its Snyder's of Hanover® Pretzels, Snyder's of Hanover® Chips, Cape Cod® Potato Chips, Eatsmart Naturals® Snacks, Padrino's® Chips and Snack Factory Pretzel Crisps labeled "All Natural" (collectively, the "Products"). Specifically, Plaintiffs allege that Defendant manufactures, markets, and sells the Products as "All Natural,"[6] despite the fact that the same allegedly contain genetically modified ingredients. The Snyder's Actions sought injunctive and monetary relief.

The proposed Settlement compensates Class Members by providing Class Members both with injunctive relief and monetary relief for damages incurred.

The injunctive relief component requires Defendant, subject to certain limitations, to cease to advertise, market, or manufacture Products with Labeling bearing or including the "All Natural" label.

The monetary relief Defendant will provide is substantial and reasonable under the circumstances.   Specifically, Defendant will provide claimants who do not provide proof of purchase of the Products a check in the amount of up to $10.00, representing $1.00 compensation for up to ten (10) purchases of the Products.   Additionally, households who provide proof of

---

6.      "All Natural" means Defendants' Natural Labeling, including "All Natural," "Natural," "Naturally," "All Natural Ingredients," or any other derivation of "natural," including "nothing artificial," and/or "no preservatives.

purchase may seek compensation up to $20.00 for Products purchased, representing $1.00 for compensation for up to twenty (20) purchases of the Products.   To satisfy these claims, Defendant has agreed to provide a guaranteed Common Fund available to pay class member claims in the amount of $2,762,500.00.

Furthermore, Defendant will pay all costs of noticing the Class, the costs of claims administration, any Court-awarded attorneys' fees and expenses, and the Class Representatives' incentive awards. These amounts will be paid from the $2,762,500.00 Common Fund.

## II.    HISTORY OF THE LITIGATION

On November 13, 2013, Plaintiffs filed the instant Action in the United States District Court for the Southern District of Florida, alleging that the "All Natural" statement on the Products is false, deceptive, misleading, and sold pursuant to an unfair business practice. On November 10, 2014, the *Seidman* action was filed in Southern District of Florida. On April 1, 2015, the currently pending, but stayed, *McDonough* action was filed in the Eastern District of New York. On June 10, 2015, the currently pending, buy stayed, *Korn* action was filed in the Northern District of California.  All  Actions were filed by the same counsel representing the *Seidman* plaintiffs, and brought on behalf of the named Plaintiffs and all others similarly situated and all involved overlapping facts and legal theories.

The Parties engaged in extensive discovery.  The Parties exchanged over 150,000 pages of documents and conducted thirteen depositions, including the depositions of four of the representative Plaintiffs, Defendant's employees, and the Parties' experts. The Parties have briefed several motions to dismiss, class certification, summary judgment, and various pre-trial motions.[7] Although contentious throughout, and despite two joint mediation sessions proving unsuccessful, the Parties continued to engage in lengthy and extensive settlement negotiations. At all times, the Parties' negotiations were adversarial, non-collusive, and at arms' length. Ultimately, following full merits discovery, class certification, and expert discovery, the Parties reached a settlement in principle, which was later memorialized in the Stipulation.

___

7.      In the instant action, Plaintiffs' Supplemental Motion for Class Certification (ECF No. 74) and Defendant's Partial Motion to Dismiss (ECF No. 156) are fully briefed. The following Motions are partially briefed: Motion for Summary Judgment (ECF No. 171); Motion in Limine to Strike Portions of the Expert Report of Charles M. Benbrook and to Limit His Trial Testimony (ECF No. 168); Motion in Limine to Exclude Expert Report and Testimony of Michael B. Mazis (ECF No. 180); Motion to Exclude the Expert Testimony of Carol Scott (ECF No. 181); and Motion to Strike the Declaration Testimony of Carol Scott (ECF No. 182).

### III.   SETTLEMENT TERMS

**A.   The Injunctive Relief Component**

The Stipulation of Settlement calls for Defendant to provide prospective relief relating to the Products, including revisions to its advertising and marketing statements. Within 365 calendar days after entry of the Final Judgment and Order Approving Settlement, and subject to certain limitations,[8] the injunctive relief component requires Defendant to cease to advertise, market, or manufacture Products with Labeling bearing or including the statements "All Natural," "Natural," "Naturally," "All Natural Ingredients," or any other derivation of "natural," including "nothing artificial," and/or "no preservatives." If Defendant chooses to resume using a Natural Label it shall ensure the Products are not made with ingredients derived from GMOs or GMO Crops.

**B.   The Monetary Relief Component**

Defendant has agreed to provide significant monetary compensation to Class Members who submit valid claims forms. Defendant has agreed to provide compensation to Claimants, without proof of purchase, $1.00 per purchase of claimed Products, up to $10.00, for damages incurred from purchasing the Products during the Class Period.   Additionally, Defendant has agreed to provide compensation to Claimants, who have proofs of purchase, $1.00 per purchase, up to a maximum of $20.00.

Defendant has guaranteed that it will satisfy all valid Claims made from the Common Fund.  If the total of Approved Claims exceeds the cash benefit available in the Common Fund, the claims administrator will pay a pro rata reduction of the amount due each Settlement Class Member such that the aforementioned amount will satisfy all Approved Claims.  Additionally,

---

[8] Specifically, the injunctive relief component does not prevent Defendant from making further changes to any of its product labels or marketing: (1) to comply with any statute, regulation, or other law of any kind; (2) that are necessitated by product changes and/or to ensure that Defendant provides accurate product descriptions; or (3) that are more detailed than those required by the Settlement Agreement.  In addition, "all restrictions imposed upon Defendant by the Settlement upon the use of a Natural Label with respect to Products shall terminate (1) in the event the United States Food and Drug Administration (or a successor agency thereto) allows the use of the term "natural" or any substantially similar term in connection with food products made with ingredients derived from GMOs or GMO crops; and (2) as to any particular Product, the commitment of Defendant to eliminate the Natural Label shall not apply to that Product in the event that Defendant develops a version of the Product that is not made with ingredients derived from GMOs or GMO Crops; provided, however, that this exception shall apply only to the non-GMO version(s) of such Products."

any Residual Amount, as that term was defined in the Stipulation, will be applied toward the retail value of Snyder's-Lance, Inc. food products, which Defendant shall donate to charity, namely, Feeding America.   Such distribution will be made within eighteen (18) months following the Payment Distribution Date.

**C.**     **Class Claims Administration, Attorney's Fees, and the Proposed Notice Plan**

The Settlement provides that Defendant shall pay for the costs of Class Notice and claims administration, including any third-party costs to secure performance of the settlement obligations, up to a maximum of three hundred fifty thousand and no/100 dollars ($350,000.00). With respect to Attorney's Fees and Expenses, Class Counsel intends to apply to the Court for a Fee and Expense Award of $890,000.00, which Defendant has agreed not to oppose.   The Settlement also provides for a $5,000.00 class representative service award to each of the representative Plaintiffs who were deposed,[9] and a $2,500.00 class representative service award to each of the representative Plaintiffs who were not deposed.[10]

No later than twenty-one (21) calendar days after entry of the Preliminary Approval Order or such other date as the Court may order, the claims administrator shall cause Notice to be delivered to the Class pursuant to the Notice Plan.   The Notice Plan entails three parts:  (1) creation of a Settlement Website; (2) creation of a Settlement toll-free number; and (3) publication.   The Publication Notice will be effectuated through targeted hard-copy and internet publication.

The long-form Notice shall be posted to the Settlement Website and will inform Settlement Class Members about pertinent Settlement terms and criteria, including opt-out dates and the impact of Settlement on existing litigation, arbitration, or other proceedings.

The Parties have specifically set forth the mechanisms for Class Members to object and opt-out of the Settlement, upon Notice Plan being effectuated.

---

9.      Adele Ferrera, Dana Cooke, Rahsaan Ashford, and Anne Steimle.

10.     Matthew McDonough, Steve Trout, Terry Shapiro, Benjamin Bartell, Arthur Karos, Larry Rosengarten, David Korn, Tina Mary Brunello, and Joshua Seidman.

## IV.   THE   PROPOSED   SETTLEMENT   MEETS   THE   CRITERIA   FOR PRELIMINARY APPROVAL

At the preliminary approval stage the Court need only "make a preliminary determination of the fairness, reasonableness and adequacy of the settlement" so that notice of the Settlement may be given to the Class and a fairness hearing may be scheduled to make a final determination regarding the fairness of the Settlement.  *See* 4 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, § 11.25 (4th ed. 2002); David F. Herr, *Annotated Manual for Complex Litigation* ("*Manual*") § 21.632 (4th ed. 2008).  In so doing, the Court reviews the Settlement to determine if it "is 'within the range of possible approval' or, in other words [if] there is a 'probable cause' to notify the class of the proposed settlement." *Fresco v. Auto Data Direct, Inc.*, No. 03-61063, 2007 U.S. Dist. LEXIS 37863, at *11-12 (S.D. Fla. May 11, 2007) (internal citations omitted); *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984) (A proposed settlement must be "fair, adequate and reasonable and [not] the product of collusion between the parties").

Based on evaluation of the facts and governing legal principles, and the recognition of the risks inherent in continued litigation of this Action, Plaintiffs submit that the  proposed Settlement Agreement is in the best interests of the Settlement Class. Accordingly,  Plaintiffs hereby move for preliminary approval of the Settlement.

As set forth in further detail below, the proposed Settlement plainly meets the standard for preliminary approval.  Thus, the Parties move that the Court enter the [Proposed] Order Granting Preliminary Approval of Class Action Settlement that, among other things:   (1) preliminarily approves the terms of the Settlement; (2) approves the form, method and plan of Class Notice; (3) certifies the Class for settlement purposes; and (4) schedules a Final Approval Hearing and related dates at which the request for final approval of the proposed Settlement and entry of the Final Judgment and Order will be considered. *See* Proposed Order, attached hereto as Exhibit C**.**

### A.   The Standard for Preliminary Approval

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of any settlement agreement in a class action. *See* Fed. R. Civ. P. 23(e). This involves "a two-step process: preliminary approval and a subsequent fairness hearing." *Smith v. WM. Wrigley Jr. Co.*, No. 09-60646-CIV, 2010 WL 2401149, at *2 (S.D. Fla. June 15, 2010) (citing Manual for Complex Litigation ("MCL")). First, the parties submit the proposed settlement to the court for

preliminary approval. *Id.* If the court grants preliminary approval, the second step of the process ensues; notice is given to the class members of a final fairness hearing, at which time class members and the settling parties may be heard with respect to final court approval. *Id.* at *7.

The approval of a proposed class action settlement is a matter within the broad discretion of the trial court and will not be overturned unless the district court "clearly abused its discretion in approving the settlement." *Young v. Katz*, 447 F.2d 431, 432 (5th Cir. 1971);[11] *see also In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992). In making the determination, the Court should evaluate the settlement's fairness in its entirety. *Bennett*, 737 F.2d at 986.

Settlements of class actions prior to trial are strongly favored. *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 207 (5th Cir. 1981). The preliminary approval step requires the Court to "make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms." *Manual*, § 21.632, at 321. At this stage, the Court need only conduct a *prima facie* review of the relief and notice provided by the Stipulation to determine whether notice should be sent to the Class Members. *Id.* "In determining whether to approve a proposed settlement, the cardinal rule is that the District Court must find that the settlement is fair, adequate and reasonable and is not the product of collusion between the parties." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977); *see also Access Now, Inc. v. Claire's Stores, Inc.*, No. 00-14017-CIV, 2002 WL 1162422, *1 (S.D. Fla. May 7, 2002). This is a minimal threshold:

> In performing this balancing task, the trial court is entitled to rely upon the judgment of experienced counsel for the parties. Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.
>
> In addition to examining the merits of a proposed settlement and ascertaining the views of counsel, the Court should consider other factors.
>
> Practical considerations may be taken into account. It is often said that litigants should be encouraged to determine their respective rights between themselves. Particularly in class action suits, there is an overriding public interest in favor of settlement. It is common knowledge that class action suits have a well-deserved reputation as being most complex. The requirement that counsel for the class be experienced attests to the complexity of the class action.

---

11. Decisions by the former Fifth Circuit issued before October 1, 1981 are binding as precedent in the Eleventh Circuit. *See Slater v. Energy Services Group Intern., Inc.*, No. 09-13794, 2011 WL 782023, *6, n.3 (March 8, 2011 11th Cir. 2011).

*Cotton*, 558 F.2d at 1330-31 (internal citations omitted); *see also Ass'n for Disabled Ams. Inc. v. Amoco Oil Co.*, 21 F.R.D. 457, 466-67 (S. D. Fla. 2002).

The proposed Settlement satisfies the standard for preliminary approval.

    **B.**    **The Proposed Settlement Was the Result of Serious, Informed, and Non-Collusive Arm's Length Negotiations**

The requirement that a settlement be fair is designed to protect against collusion among the parties.  Typically, "[t]here is a presumption of fairness when a proposed class settlement, which was negotiated at arm's-length by counsel for the class, is present to the Court for approval." *Newberg*, § 11.41; *see also In re Employee Benefit Plans Sec. Litig.*, No. 3-92-708, 1993 WL 330595, *5 (D. Minn. June 2, 1993) ("[t]he court is entitled to rely on the judgment of experienced counsel in its evaluation of the merits of a class action settlement").

Here, the Parties did not reach a Settlement until after substantial investigation, extensive discovery, almost half a year of negotiation and mediation, significant motion practice, and continued post-mediation negotiations.  Indeed, the Settlement required the assistance of an experienced mediator, Rodney A. Max.  Mr. Max's services only proved successful as a result of continued sessions following a full-day of in-person mediation at his offices, and following a second telephonic settlement conference.  By this time, Plaintiffs and their counsel, who have significant experience in prosecuting complex consumer class actions such as the instant case, had a "clear view of the strengths and weaknesses" of their case and were in a strong position to make an informed decision regarding the reasonableness of a potential settlement.  *See In re Warner Commc'ns Sec. Litig*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985); *see also Manchaca v. Chater*, 927 F. Supp. 962, 967 (E.D. Tex. 1996).

The fact that the Parties received the above-referenced assistance from an experienced mediator is one factor which evidences that the Settlement is not collusive. *See Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (concluding that class settlement was not collusive in part because it was overseen by "an experienced and well-respected mediator"); *see also Adams v. Inter-Con Sec. Sys., Inc.*, No. C-06-5428 MHP, 2007 WL 3225466, *3 (N.D. Cal. Oct. 30, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive"); *In re Indep. Energy Holdings PLC*, No. 00 Civ. 6689(SAS), 2003 WL 22244676, *4 (S.D.N.Y. Sept. 29, 2003) ("the fact that the settlement was

reached after exhaustive arm's length negotiations, with the assistance of a private mediator experienced in complex litigation, is further proof that it is fair and reasonable"). Further, the nature of the subsequent negotiations between the Parties, the experience of Class Counsel, and the fair result reached are illustrative of the arm's-length negotiations that led to the Settlement.

### C.    The Proposed Settlement Is Fair to Both the Plaintiff and Class Members

In considering whether a Settlement Agreement is fair, reasonable and adequate upon preliminary review courts should consider the following factors:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*See W.M. Wrigley*, 2010 WL 2401149 at *2 (citing *Bennet v. Behrina Corp.*, 737 F.2d 982, 986 (11th Cir. 1984)). Consideration of the aforementioned criteria reveals that the proposed settlement of this case is fair, adequate and reasonable and, therefore, comports with the requirements of Rule 23(e).

The proposed Settlement is fair because it provides Class Members with the ability to claim up to $10.00 for purchasing the Products without providing any proof of purchase. Furthermore, the Settlement also allows for Class Members to receive up to $20.00 for purchases of the Products with proof of purchase. Moreover, all Class Members, and future purchasers of the Products, receive the benefits of the injunctive relief Defendant has agreed to, namely, refraining from labeling its products as "All Natural" (subject to certain limitations outlined in the Stipulation).

### D.    The Terms of the Settlement Compel Preliminary Approval

The Settlement meets the standards for preliminary approval. *Cotton*, 559 F.2d 1326. Plaintiffs and Plaintiffs' counsel are confident in the strength of their case, but are also practical in their awareness of the various defenses available to Defendant, and the risks inherent in litigation. Further, protracted litigation carries risks that would necessarily have substantially delayed and endangered the class members' recovery. The Settlement provides economic benefits to Class Members without the risk and delays of continued litigation, trial, and appeal. The expense, complexity, and duration of litigation are significant factors considered in

11

evaluating the reasonableness of a settlement.  Litigating this class action through trial would undoubtedly be time-consuming and expensive.  As with most class actions, this action is complex.  *Cotton*, 559 F.2d at 1331 ("class action suits have a well-deserved reputation as being most complex").  Determining whether Defendant engaged in unfair methods of competition, unconscionable acts and practices, and unfair and deceptive acts and practices; and whether Defendant materially misrepresented the true qualities or naturalness of the Products, would require additional extensive analysis by experts for both Parties.  At a minimum, absent settlement, after appeals litigation would likely continue for years before the Plaintiffs or the Class might see a recovery.  That a settlement would eliminate the delay and expenses strongly weighs in favor of approval.  *See Milstein v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y. 1984).

At its essence, this Settlement provides guaranteed substantial injunctive and financial relief to the Settlement Class without further delay.  Accordingly, there can be no doubt that the relief afforded pursuant to the Settlement Agreement is a fair and reasonable recovery in light of the challenging and unpredictable path of litigation Plaintiffs would have faced absent a settlement.

The cash available to the Class is reasonable given the procedural posture and the complexity of the litigation and the significant barriers that stood between now and any final judgment in favor of Plaintiffs and the Class: denial of class certification; interlocutory Rule 23(f) appeal of class certification; subsequent decertification; summary judgment; trial; and, post-trial appeals.  Additionally, the non-monetary relief—Defendant's agreement to remove the "All Natural" claims—also provides meaningful benefits.

By reaching this Settlement, the Parties will avoid protracted litigation and will establish a means for prompt resolution of Class Members' claims against Defendant.  Given the alternative of long and complex litigation before this Court, the risks involved in such litigation, and the possibility of further appellate litigation, the availability of prompt relief under the Settlement is highly beneficial to the Class.  Thus, by reaching the Settlement, the Parties will avoid potentially adverse rulings, both on the merits and class certification issues.  The Settlement establishes a mechanism by which all Settlement Class Members may obtain meaningful relief, whereas  full-blown litigation could result in the Settlement Class not realizing any benefit.

In reaching the Settlement, the Parties took into account the strengths and weaknesses of their respective positions, the risks involved with further litigation, and the likely recovery after trial and on appeal.  Based on evaluation of all the risk factors, Plaintiffs' Counsel determined that continued litigation was unlikely to result in any greater recovery than reached in the Settlement.  Counsel also brokered the settlement through the use of Rodney A. Max, a highly respected mediator. Such facts demonstrate that the Settlement was not the product of collusion and further underscore that the Settlement should now be granted preliminary approval. *See Lipuma v. American Express Co.*, 406 F. Supp. 2d 1298, 1319 (S.D. Fla. 2005) (approving class settlement that was "the result of informed, arms-length negotiations by experienced class counsel").

## V.    THE CLASS SHOULD BE CONDITIONALLY CERTIFIED

The Eleventh Circuit recognizes the strong public policy favoring the pretrial settlement of class action lawsuits.  *See In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992); *Cotton*, 559 F.2d at 1331.  This is especially true, as recognized by courts from around the country, of nationwide settlements, such as this.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th 1998) (certifying nationwide settlement class); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 314—315 (3d Cir. 1998) (nationwide settlement classes are commonly certified).   When presented with a proposed settlement, a court must determine whether the proposed settlement class satisfied the requirements for class certification under Rule 23, *Federal Rules of Civil Procedure.  Id.*  But in assessing those certification requirements, a court may properly consider that there will be no trial.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial").

**A.      The Settlement Class Satisfies Federal Rule of Civil Procedure 23(a)**

Rule 23(a), *Federal Rules of Civil Procedure*, enumerates four prerequisites for class certification:  (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy.  Each of the requirements is met by the Settlement Class.

**1.      Numerosity**

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impractical."  FED. R. CIV. P. 23(a).  The Product is popular nationally with hundreds of thousands of customers; thus, the numerosity requirement is met.

**2.      Commonality**

The commonality requirement is met if there is at least one question of law or fact common to the members of the Class.  FED. R. CIV. P. 23(a)(2).  The commonality requirement is a "relatively light burden" that "does not require that all questions of law and fact raised by the dispute be common."  *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1268 (11th Cir. 2009) (citations omitted).  Rather, it "simply requires that there be at least one issue whose resolution will affect all or a significant number of the putative class members."  *Fitzpatrick*, 263 F.R.D. at 696 (citing *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009).  Commonality is satisfied where questions of law refer to standardized conduct by the defendant toward members of the proposed class.  *In re Amerifirst Sec. Litig.*, 139 F.R.D. 423, 428 (S.D. Fla. 1991).

Here, the case involves the labeling of Defendant's Products.  The uniform Natural Labeling is similar such that Defendant's conduct is considered standardized.  Further, because the Snyder's Action Plaintiffs and the Class Members as a whole allege they were deceived as a result of the identical language in substantially the same manner, *i.e.*, by purchasing the Products, the commonality requirement has been met.

**3.      Typicality**

The Rule 23(a) typicality requirement ensures that the class representative has the same interests as the class.  That is, "typicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large."  *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314 (11th Cir. 2008).  The typicality requirement, like commonality, is not demanding.  *See In re Disposable Contact Lens Antitrust Litig.*, 170 F.R.D. 524, 532 (M.D. Fla. 1996).  Similarly, typicality does not require that all putative class members share identical

claims.  Rather, all that is required is that the claims of the named plaintiff have the same essential characteristics as the class at large.  "[A] strong similarity of legal theories will satisfy the typicality requirement despite substantial factual differences."  *Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985).

Here, the Snyder's Action Plaintiffs' and Class Members' claims arise from the same course of conduct (Defendant's allegedly misleading Product labels), which allegedly led to the Snyder's Action Plaintiffs' and Class Members' purchases of the Products, and the resultant economic injury they allege to have suffered.

### 4.     Adequacy of Representation

Finally, Rule 23(a) requires a showing that the representative party will fairly and adequately protect the interests of the class.  The requirement has two components:  (1) the proposed representative has interest in common with, and not antagonistic to, the interests of the class; and (2) the plaintiff's attorneys are qualified, experienced, and generally able to conduct the litigation. *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718 (11th Cir. 1987).

Adequacy is plainly met in this case. The proposed Class Representatives are not antagonistic to the claims of the Class Members, and Plaintiffs' counsel are experienced in complex class actions similar to this one. Declarations of proposed class counsel are attached as Exhibits D-F.

### B.     The Settlement Class Should Be Preliminarily Approved Under the Federal Rule of Civil Procedure 23(b)(3)

In addition to the requirements set forth in Rule 23(a), *Federal Rules of Civil Procedure*, in the context of the proposed Settlement, Plaintiffs also satisfy the requirements set forth in Rule 23(b)(3), *Federal Rules of Civil Procedure*, which requires that common questions of law or fact predominate over individual questions, and that class action treatment is superior to other available methods of adjudication.  As set forth below, the Snyder's Action meets Rule 23(b)(3), *Federal Rules of Civil Procedure*'s, requirements.  Accordingly, this Court should conditionally certify the Class proposed by the Parties.

### 1. Common Questions Predominate Over Individual Issues

Common questions of law or fact predominate over individual questions when the issues in the class action are subject to generalized proof that applies to the case as a whole. *Rutstein v. Avis Rent-A-Car Sys.*, 211 F.3d 1228, 1233 (11th Cir. 2000); *Amchem*, 521 U.S. at 625 ("Predominance is a test readily met in certain cases alleging consumer or securities fraud"). Thus, in deciding whether common questions predominate under Rule 23(b)(3), the focus is generally on whether there are common liability issues that may be resolved on a class-wide basis. *See, e.g., Klay v. Humana*, 382 F.3d 1241, 1269 (11th Cir. 2004). "[I]t is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions." *Busby*, 513 F.3d at 1354.

Predominance exists here. The central issue for every Class Member is whether Defendant's claims that the Products were "Natural" was likely to deceive a reasonable consumer. Plaintiffs submit that under these circumstances, the requirements of Rule 23(b)(3) are present. *See Weiner*, 255 F.R.D. at 669 (predominance satisfied when alleged misrepresentation of product's health benefits were displayed on every package).

### 2. A Class Action Is the Superior Method to Settle This Controversy

Federal Civil Procedure Rule 23(b)(3) lists four factors that the Court should consider when taking into account whether a class action is superior to other methods of adjudicating this action: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in a particular forum; and (D) the likely difficulties in managing a class action. FED. R. CIV. P. 23(b)(3)(A)-(D). "[T]he improbability that large numbers of class members would possess the initiative to litigate individually" further compels a finding of superiority. *Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 318 (S.D. Fla. 2001); *Amchem*, 521 U.S. at 617 (same); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) (same).

An assessment of the Rule 23(b)(3) "superiority" factors show that a class action is the preferred procedure in this case. The amount of damages suffered by the vast majority of Class Members is not large. *Weiner*, 255 F.R.D. at 671. It is neither economically feasible, nor judicially efficient, for the hundreds of thousands of Class Members to pursue their claims against Defendant on an individual basis. *Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326,

338—39 (1980).  Additionally, the difficulties of managing a class action are vitiated by the fact of this Settlement.  When "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620.

## VI.   THE PROPOSED CLASS NOTICE PROGRAM IS APPROPRIATE AND CLASS NOTICE SHOULD BE APPROVED

The threshold requirement concerning class certification is whether the means employed to distribute the notice was reasonably calculated to apprise the class of the pendency of the action, of the proposed settlement, and of the Class Members' rights to opt out or object.  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974); *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950).  The mechanics of the notice process are left to the discretion of the court, subject only to the broad "reasonableness" standards imposed by due process.  In this Circuit, it has long been the case that a notice of settlement will be adjudged satisfactory if it reaches the parties affected and conveys the required information.  *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1104—05 (5th Cir. 1977) (the class members' "substantive claims must be adequately described [and] the notice must also contain information reasonably necessary to make a decision to remain a class member and be bound by the final judgment").  Courts have found that when there is no way to directly notify each member of  a class, notice by reasonable means, including by publication, is acceptable. *See W.M. Wrigley,*  2010 WL 2401149, at *6.

The Proposed Class Notice – collectively, the publication, website, and toll-free number – easily satisfy these requirements. The Class Notice is written in simple terminology and includes: (1) basic information about the Snyder's Actions; (2) a description of the benefits provided by the Settlement; (3) an explanation of how Class Members can obtain Settlement benefits; (4) an explanation of how Class Members can exercise their right to opt-out or object to the Settlement; (5) an explanation that any claims against Defendant that could have been litigated in the Snyder's Actions will be released if the Class Member does not opt-out from the Settlement; (6) the names of Class Counsel and information regarding requested attorney's fees and incentive awards; (7) the Final Approval Hearing date; (8) an explanation of eligibility for

appearing at the Final Approval Hearing; (9) the Settlement Website; and (10) the toll-free Settlement Phone Number.[12]

The contents of the proposed Class Notice are more than adequate.  The Class Notice provides Class Members with sufficient information to make an informed and intelligent decision whether to participate in the Settlement.  As such, it satisfies the content requirements of Rule 23.  *See In re Compact Disc. Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 203 (D. Me. 2003) ("notice must describe fairly, accurately and neutrally the claims and parties in the litigation, the terms of the proposed settlement, and the options available to individuals entitled to participate, including the right to exclude themselves from the class").

Additionally, the proposed plan to disseminate the Class Notice satisfies all due process requirements.  To facilitate implementation of the Class Notice and administer the claims process, the Parties request that the Court approve the Angeion Group as Claim Administrator to disseminate Class Notice after the Court preliminarily approves the Settlement.  Angeion Group is a nationally recognized administrator for class action settlement and legal notice programs.

Notice will be published in the targeted print and online sources listed in the Notice Plan.  To facilitate the claims process, Class Notice and Claim Forms will be available through the Settlement Website maintained by the Claim Administrator.

In sum, the contents and dissemination of the proposed Class Notice constitute the best notice practicable under the circumstances and fully comply with the requirements set forth in Rule 23, *Federal Rules of Civil Procedure.*

## VII.   THE PROPOSED SCHEDULE OF EVENTS

In order to provide the broadest possible coverage, the Parties have agreed to publish Class Notice, which will contain the relevant dates for Class Members.   The Parties' proposed schedule depends upon the Court's preliminary approval and scheduling of the Final Approval Hearing.  If the Court grants the preliminary approval and sets a date for a Final Approval Hearing, the Parties can provide the Clerk with dates in accordance with the Settlement process.  Notwithstanding, assuming the Court grants the preliminary approval by September 28, 2015 or

---

[12] Attached as **Exhibit G** is the Notice Plan prepared by Angeion Group, testifying that the proposed notice plan is designed to reach a minimum of 70% of class members.  Copies of the publication notices as well as the long-form notice are attached as Exhibits 1 and 2 to the Stipulation of Settlement

earlier, the Parties propose January 29, 2016 as an appropriate date for the Final Approval Hearing.  Notice to the Class would begin October 19, 2015. Plaintiffs will file their opening papers in support of final approval and request for attorney's fees on December 4, 2015, (54 days prior to the Final Approval Hearing), the last day for Class Members to opt-out, object or file notices of appearance would be December 30, 2015 (30 days before the Final Approval Hearing), and the reply in support of final approval and in opposition to any objections would be due January 22, 2016, (7 days before the Final Approval Hearing).

If preliminary approval is not granted by September 28 Plaintiffs will provide dates by which these other actions will occur, based upon any changes to the dates by which the Notice Plan can be implemented, or as set by the Court.  Accordingly, the Parties request that the Court schedule a Final Approval Hearing on January 29, 2016, or as soon thereafter as the Court's schedule permits.

## VIII.   LEAVE TO FILE THIRD AMENDED COMPLAINT SHOULD BE GRANTED

Pursuant to Fed. R. Civ. P. 15, and Local Rule 15.1, Plaintiffs, as part of the Settlement, seek leave to file their Third Amended Complaint ("TAC") on behalf of Class. Pursuant to Fed. R. Civ. P. 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave to amend when justice so requires." Here, as a material part of the Settlement, Defendant does not oppose the filing of the TAC. The TAC is being filed for the purpose of joining certain of the representative Plaintiffs, and to ensure that the claims to be released are properly framed by the operative pleadings. However, pursuant to the Court's scheduling order, the pleading amendment deadline was March 28, 2014. *See* Scheduling Order [DE 42]. In light of the Settlement, which will provide a final resolution and end to further judicial labor on the Snyder's Actions, good cause exists for the filing of the TAC. The Court is authorized to grant leave to amend for settlement purposes, and to contemporaneously deem the TAC filed as of the date of the class settlement preliminary approval order. *See Borcea v. Carnival Corp.*, Case No. 1:05-cv-22968, Order Granting Joint Motion for Preliminary Approval of Class Action Settlement and Other Relief [Dkt. No. 53] (S.D. Fla. May 5, 2006); *see also Castillo v. Gen. Motors Corp.*, 2008 WL 8585691, at *1, fn.1 (E.D. Cal. Sept. 8, 2008) (granting plaintiffs' motion for leave to file their second amended complaint in class action after pretrial deadline in scheduling order because plaintiffs demonstrated diligence in filing their motion immediately after reaching a settlement agreement).

19

## IX.    CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request, with Defendant's consent, that the Court enter the [Proposed] Order:   (1) Allowing the filing of the Third Amended Complaint for settlement purposes; (2) certifying the Class; (3) designating Plaintiffs as Class Representatives; (4) appointing Joshua H. Eggnatz of Eggnatz, Lopatin & Pascucci, LLP; Michael R. Reese of Reese LLP; and Melissa W. Wolchansky of Halunen Law, as Class Counsel; (5) granting preliminary approval of the Settlement; (6) approving the proposed Class Notice Plan and directing that it be implemented; and (7) scheduling the Final Approval Hearing.

Respectfully submitted by:

Dated:  September 22, 2015

*/s/ Joshua H. Eggnatz*
Joshua H. Eggnatz
Florida Bar No. 68026
**EGGNATZ, LOPATIN & PASCUCCI, LLP**
54000 S. University Drive, Suite 413
Davie, Florida 33328
Email: jeggnatz@ELPLawyers.com
Telephone: 954.889.3359
Facsimile: 954.889.5913

Michael R. Reese (admitted *pro hac vice*)
**REESE LLP**
100 West 93rd Street, 16th Floor
New York, New York 10025
Email: mreese@reesellp.com
Telephone: 212.646.0500
Facsimile:  212.253.4272

Melissa W. Wolchansky (admitted *pro hac vice*)
**HALUNEN LAW**
1650 IDS Center
80 South Eight Street
Minneapolis, Minnesota 55402
Email: wolchansky@halunenlaw.com
Telephone: 612.605.4098
Facsimile: 612-605-4099

*Counsel for Plaintiffs and the Class*

## LOCAL RULE 7.1 (A)(3) CERTIFICATION

Pursuant to Local Rule 7.1(A)(3), counsel for Plaintiffs have conferred with counsel for Defendant, who agrees with the relief requested in this Motion.

Dated: September 22, 2015

*/s/ Joshua H. Eggnatz*
Joshua H. Eggnatz
Florida Bar No. 0067926
**Eggnatz, Lopatin & Pascucci, LLP**
54000 S. University Drive, Suite 413
Davie, Florida 33328
Email: jeggnatz@ELPLawyers.com
Telephone: 954.889.3359
Facsimile: 954.889.5913

Michael R. Reese, admitted *pro hac vice*
**Reese LLP**
100 West 93rd Street, 16th Floor
New York, New York 10025
Email: mreese@reesellp.com
Telephone: 212.646.0500
Facsimile:  212.253.4272

Melissa W. Wolchansky, admitted *pro hac vice*
**Halunen Law**
1650 IDS Center
80 South Eight Street
Minneapolis, Minnesota 55402
Email: wolchansky@halunenlaw.com
Telephone: 612.605.4098
Facsimile: 612-605-4099

*Counsel for Plaintiffs and the Class*

## CERTIFICATE OF SERVICE

The undersigned certifies that on September 22, 2015, I caused the foregoing to be filed with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel or parties of record on the service list set forth below.

 _/s/ Joshua H. Eggnatz_

Joshua H. Eggnatz

### SERVICE LIST
*Barron et al. v. Snyder's-Lance, Inc.*
Case No. 0:13-cv-62496-LENARD/GOODMAN
United States District Court for the Southern District of Florida

Joshua H. Eggnatz
**EGGNATZ, LOPATIN & PASCUCCI, LLP.**
54000 S. University Drive, Suite 413
Davie, Florida  33328
954-889-3359
Fax: 954-889-5913
Email: *JEggnatz@ELPLawyers.com*

Benjamin M. Lopatin (admitted *pro hac vice*)
**EGGNATZ, LOPATIN & PASCUCCI, LLP.**
580 California Street, Suite 1200
San Francisco, CA  94104
415-324-8620
Email: *BLopatin@ELPLawyers.com*

Michael R. Reese (admitted *pro hac vice*)
**REESE LLP**
100 West 93rd Street, 16th Floor
New York, New York 10025
212-646-0500
Email: *mreese@reesellp.com*

Melissa W. Wolchansky (admitted *pro hac vice*)
**HALUNEN LAW**
1650 IDS Center
80 South Eight Street
Minneapolis, MN  55402
612-605-4098
Email: *wolchansky@halunenlaw.com*

Michael Thomas Fraser
**THE LAW OFFICES OF**
**HOWARD W. RUBINSTEIN, P.A.**
One Embarcadero Center, Suite 500
San Francisco, CA  94111
800-436-6437
Fax: 415-692-6607
Email: *mfraser@hwrlawoffice.com*

Kiran H. Mehta
**TROUTMAN SANDERS LLP**
301 South College Street
Suite 3400
Charlotte, NC  28202
704-998-4072
Fax: 704-998-4051
Email: *kiran.mehta@troutmansanders.com*

Matthew G. Ball (admitted *pro hac vice*)
**K&L GATES, LLP**
4 Embarcadero Center
Suite 1200
San Francisco, CA  94111
415-249-1014
Email: *matthew.ball@klgates.com*

April Lynn Boyer
Jonathan Bart Morton
Olivia Rae Waters Kelman
**K&L GATES, LLP**
Southeast Financial Center
200 South Biscayne Boulevard
Suite 3900
Miami, FL  33131-2399
305-539-3357
Fax: 305-358-7095
Email: *april.boyer@klgates.com*
          *jonathan.morton@klgates.com*
          *olivia.kelman@klgates.com*

26899207v2