**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

**CASE NO. 0:13-cv-62496-LENARD-GOODMAN**

ADELE FERRARA, DANA COOKE,
RAHSAAN ASHFORD, ANNE STEIMLE,
STEVE TROUT, TERRY SHPIRO,
BENJAMIN BARTELL, ARTHUR KAROS,
 LARRY ROSENGARTEN, and JOSHUA
SEIDMAN, individually and on behalf of all others
similarly situated,

    Plaintiffs,

  v.

SNYDER'S-LANCE, INC. and SNACK FACTORY,
LLC, a wholly-owned subsidiary of SNYDER'S-LANCE,
INC,

    Defendants.

**<u>PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT AND REQUEST FOR ENTRY OF FINAL JUDGMENT AND
INCORPORATED MEMORANDUM OF LAW</u>**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ……………………………………………………………………….. 2

STATEMENT OF FACTS ……………………………………………………………… 3

I.   Procedural and Factual Background ........................................................................ 3

II.  The Settlement ........................................................................................................ 4

   a.   The Settlement Class............................................................................................ 5

   b.   Snyder's-Lance Must Change the Labeling and Marketing of the Products. ..................... 5

   c.   Snyder's-Lance Must Contribute a Substantial Sum to a Settlement Fund to Compensate Those Persons Allegedly Harmed by its Allegedly Deceptive Labeling, Advertising, and Marketing Practices. ..................................................................................................... 5

   d.   Defendant Agrees to Class Certification for Settlement Purposes Only ............................ 6

   e.   Defendant Will Pay the Cost of the Notice and Claims Administration   ……………   6

   f.   Defendant Will Pay Plaintiffs' Incentive Awards and Court-Ordered Attorneys' Fees and Litigation Costs ...................................................................................................... 7

III.  Notice to the Settlement Class ........................................................................... 7

ARGUMENT …………………………………………………………………………… 8

I.   The Court Should Grant Preliminary Approval of the Settlement. ........................................ 8

   a.   The Applicable Legal Standard. .......................................................................... 9

   b.   There is no evidence of fraud or collusion................................................................ 10

   c.   The Actions involved complex claims that were litigated over a course of more than two years. ........................................................................................................................ 11

   d.   The Parties finalized a Stipulation of Settlement after over two years of litigation and completion of critical discovery............................................................................... 13

   e.   The Parties faced risks had they proceeded with litigation................................................ 13

   f.   The Settlement provides meaningful injunctive and monetary relief.............................. 14

g.   There is no opposition from members of the Settlement Class and Class Counsel and the class representatives support the Settlement. ........................................................................... 15

II.   The Court Should Confirm Certification of the Settlement Class. ....................................... 17

a.   The Criteria for Class Certification under Rule 23(a) are Satisfied. .................................. 18

i.   Joinder of All Members is Impracticable. .................................................................. 18

ii.   Common Issues of Law and Fact Exist. .................................................................... 18

iii.   The Class Representatives' Claims Are Typical of the Settlement Class Claims. ....... 19

iv.   The Class Representatives and their Counsel Have Adequately Represented the Class. ............................................................................................................................... 20

b.   The Settlement Class Meets the Requirements of Rule 23(b)(3). ..................................... 21

i.   Common Questions of Law and Fact Predominate Over Individualized Issues. ........ 21

ii.   A Class Action is the Superior Method to Settle this Controversy. ........................... 22

III.   The Class Notice Satisfies the Requirements of Rule 23 and Due Process. ...................... 23

a.   The Method of Notice is Appropriate. ............................................................................... 23

b.   The Contents of the Notice Are Adequate. ....................................................................... 24

CONCLUSION ...................................................................................................................... 25

CERTIFICATE OF SERIVCE .............................................................................................. 26

SERVICE LIST ...................................................................................................................... 27

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page**

*Access Now, Inc. v. Claire's Stores, Inc.*, No. 00-14017-CIV-MOORE, 2002 U.S. Dist. LEXIS
    28975 (May 7, 2002)...........................................................................................13

*Allapattah Servs., Inc. v. Exxon Corp.*, No. 91-cv-986, 2006 U.S. Dist. LEXIS 88347 (S.D. Fla.
    Apr. 7, 2006) ...........................................................................................16, 222

*Appleyard v. Wallace*, 754 F.2d 955 (11th Cir. 1985)....................................................19

*Ass'n for Disabled Arms., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457 (S.D. Fla. 2002)...................10

*Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 543 (S.D. Fla. 1998).....................................12, 14

*Bennett v. Behring Corp.*, 737 F.2d 982 (11th Cir. 1984) .......................................................9, 14

*Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314 (11th Cir. 2008)...................................................21

*Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977)................................................................9, 10, 12

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974)....................................................................23

*Fabricant v. Sears Roebuck*, 202 F.R.D. 310 (S.D. Fla. 2001) .....................................................22

*Figueroa v. Sharper Image Co.*, 517 F. Supp. 2d 1292 (S.D. Fla. 2007) ....................................14

*Forcellati v. Hyland's, Inc.*, No. 12-CV-1983-GHK, 2014 U.S. Dist. LEXIS 50600 (C.D. Cal. Apr.
    9, 2014) ...........................................................................................19

*Gaudin v. Saxon Mortg. Servs.*, No. 11-cv-01663-JST, 2015 U.S. Dist. LEXIS 95720 (N.D. Cal.
    July 21, 2015)...........................................................................................24

*In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822 (W.D. Pa. 1995) ............................................24

*In re Checking Account Overdraft Litig.*, 275 F.R.D. 654 (S.D. Fla. 2011)..................................10

*In re Corrugated Container Antitrust Litig.*, 643 F.2d 195 (5th Cir. 1981) ..................................14

*In re Disposable Contact Lens Antitrust Litig.*, 170 F.R.D. 524 (M.D. Fla. 1996) ................12, 19

*In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297 (N.D. Ga. 1993) ............................ 16

*In re Mex. Money Transfer Litig.*, 164 F. Supp. 2d 1002 (N.D. Ill. 2000) ................................... 10

*In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088 (5th Cir. 1977) .................................. 24

*In re Prudential Insurance Company of America Sales Practices Litigation*, 962 F. Supp. 450

    (D.N.J. 1997) ................................................................................................................. 25

*In re U.S. Oil & Gas Litig.*, 967 F.2d 489 (11th Cir. 1992) ................................................ 9, 12, 18

*In re Wells Fargo Loan Processor Overtime Pay Litig.*, No. C-07-1841, 2011 U.S. Dist. LEXIS

    84541 (N.D. Cal. Aug. 2, 2011) ................................................................................. 25

*Jacobs v. Osmose, Inc.*, 213 F.R.D. 607 (S.D. Fla. 2003) ............................................................ 19

*Korn, et al. v. Snyder's-Lance, Inc.*, Case No. 3:15-cv-02593 .................................................... 2, 4

*Lee v. Ocwen Loan Servicing, LLC*, No. 14-CV-60649-GOODMAN, 2015 U.S. Dist. LEXIS

    121998 (S.D. Fla. Sept. 14, 2015) ............................................................................. 11

*Leverso v. S. Trust Bank of Ala., N.A.*, 18 F.3d 1527 (11th Cir. 1994) ........................................ 10

*Lipuma v. Amer. Express Co.*, 406 F. Supp. 2d 1298 (S.D. Fla. 2005) ..................... 11, 12, 14, 15

*McDonough v. Snyder's-Lance, Inc.*, Case No. 15-cv-01751 ...................................................... 2, 4

*Moore v. GNC Holdings, Inc.*, No. 0:12-cv-61703-WPD (S.D. Fla. Oct. 17, 2013) ................... 22

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ............................................ 23

*Nelson v. Mead Johnson & Johnson Co.*, 484 Fed. Appx. 429 (11th Cir. 2012) .......................... 9

*Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360 (S.D. Fla. 2007) ..................................... 10, 12, 13

*Poertner v. Gillette Co.*, 618 F. App'x 624 (11th Cir. 2015) ....................................................... 15

*Ressler v. Jacobson*, 822 F. Supp. 1551 (M.D. Fla. 1992) .......................................................... 12

*Rodriguez v. West Publishing Corp.*, 563 F.2d 948 (9th Cir. 2009) ............................................ 25

*Rutstein v. Avis Rent-A-Car Sys.*, 211 F.3d 1228 (11th Cir. 2000) ............................................. 21

*Saccoccio v. JPMorgan Chase Bank, N.A.*, 297 F.R.D. 683 (S.D. Fla. 2014) ............................ 10

*Seidman v. Snack Factory, LLC*, Case No. 14-cv-62547 ................................................. 3, 4

*Sharf v. Fin. Asset Resolution, L.L.C.*, 295 F.R.D. 664 (S.D. Fla. 2014) .................................... 17

*Stewart v. Winter*, 669 F.2d 328 (5th Cir. 1982).................................................................. 19

*Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256 (11th Cir. 2009) ....................................... 19

*Walco Invs. V. Thenen*, 168 F.R.D. 315 (S.D. Fla. 1996)......................................... 20

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ........................................ 19

*Warren v. City of Tampa*, 693 F. Supp. 1051 (M.D. Fla. 1988)................................. 16

*Williams v. Mohawk Indus.*, 568 F.3d 1350 (11th Cir. 2009)...................................... 19

*Wilson v. Everbank*, No. 14-CV-22264-BLOOM/VALLE, 2016 U.S. Dist. LEXIS 15751 (Feb. 3, 2016) ...................................................................................................... 10, 12, 15

*Young v. Katz*, 447 F.2d 431 (5th Cir. 1971) ............................................................ 9

**Statutes**

Fed. R. Civ. P. 23 ...................................................................................................... 17

Fed. R. Civ. P. 23(a) .................................................................................................. 18

Fed. R. Civ. P. 23(a)(2)............................................................................................. 18

Fed. R. Civ. P. 23(a)(3)............................................................................................. 20

Fed. R. Civ. P. 23(a)(4)............................................................................................. 20

Fed. R. Civ. P. 23(b)(3)...................................................................................... 21, 22, 23

Fed. R. Civ. P. 23(c)(2)(B) ...................................................................................... 23

Fed. R. Civ. P. 23(e)(2)............................................................................................. 17

**Other Authorities**

4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions (4th ed. 2002) ....................... 10

Manual for Complex Litig. ......................................................................................................... 23

## PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND REQUEST FOR ENTRY OF FINAL JUDGMENT

**PLEASE TAKE NOTICE THAT** Plaintiffs hereby respectfully move the Court, pursuant to Federal Rule of Civil Procedure 23(e), for the entry of an Order: (i) granting final approval of the Settlement Agreement filed as Exhibit B to the Unopposed Motion for Preliminary Approval of Class Action Settlement and For Leave to File Third Amended Complaint for Settlement Purposes, and Incorporated Memorandum of Law (ECF No. 199-2); (ii) confirming certification of the Settlement Class, and (iii) entering an Order and Final Judgment in this action. The fairness hearing on this motion is presently set for June 3, 2016 at 3:00 p.m. in the Courtroom of Honorable Joan A. Lenard, United States District Judge, at the United States District Court, Southern District of Florida, 400 North Miami Avenue, Room 12-1, Miami, Florida 33128.

This Motion is based on the Memorandum of Law, the Declaration of Class Counsel Melissa W. Wolchansky, the Declaration of Steven Weisbrot, Esq. and corresponding exhibits, the other papers filed in this action, and such oral and documentary evidence as may be presented at the fairness hearing on this Motion.

1

# MEMORANDUM OF LAW

## INTRODUCTION

Plaintiffs, on behalf of the Class as defined herein, respectfully apply to this Court for entry of an order (1) granting final approval of the settlement set forth in the Class Settlement Agreement (the "Stipulation of Settlement") (ECF No. 199-2), (2) confirming certification of the Class for purposes of such settlement, and (3) entering an Order and Final Judgment in this action ("Final Judgment").

The Settlement resolves claims by Plaintiffs Adele Ferrera, Dana Cooke, Rahsaan Ashford, Anne Steimle, Matthew McDonough, Steve Trout, Terry Shapiro, Benjamin Bartell, Arthur Karos, Larry Rosengarten, David Korn, Tina Mary Brunello, and Joshua Seidman against Snyder's-Lance, Inc. and Snack Factory, LLC, a wholly-owned subsidiary of Snyder's-Lance, Inc. ("Snyder's-Lance" or "Defendant"), which are described more fully herein.  Through the diligent efforts of Plaintiffs and Defendant (collectively, the "Parties"), the Parties were able to reach the Settlement presently before this Court. Plaintiffs' main objective in filing their lawsuits were to remedy the alleged deception in Defendant's marketing and labeling of Snyder's-Lance's Snyder's of Hanover® Pretzels, Snyder's of Hanover® Chips, Cape Cod® Potato Chips, Eatsmart Naturals® Snacks, Padrino's® Chips, and Snack Factory Pretzel Crisps® products bearing, or advertised or marketed with, Labeling as "All Natural," "Natural," "Naturally," "All Natural Ingredients," or any other derivation of "natural," including "nothing artificial," and/or "no preservatives" (the "Products"), which they have achieved.

This Settlement resolves Plaintiffs' claims outlined in the Third Amended Complaint, as well as three related actions: *McConough v. Snyder's-Lance, Inc.*, Case No. 15-cv-01751 (currently pending in the Eastern District of New York); *Korn, et al. v. Snyder's-Lance, Inc.*, Case

No. 3:15-cv-02593 (currently pending in the Northern District of California); and *Seidman v. Snack Factory, LLC*, Case No. 14-cv-62547 (previously dismissed) (collectively, the "Actions"). As a result of the Settlement, Defendant will make substantive changes to the advertising of the Products and provide reimbursement to consumers for past purchases.

The Settlement was reached after protracted litigation. The litigation involved hard-fought, contested motion practice, including two motions to dismiss, class certification, summary judgment, and several pre-trial evidentiary motions. Discovery was also extensive and involved voluminous document production and review and 13 depositions, including experts.

The Parties attended two mediation sessions and engaged in additional, on-going settlement discussions. These arm's-length negotiations resulted in a full settlement of the Actions, as evidence by the Stipulation of Settlement. Now, Plaintiffs submit their Unopposed Motion for Final Approval of Class Action Settlement and Request for Entry of Final Judgment to bring closure to this matter.

## STATEMENT OF FACTS

### I.       Procedural and Factual Background.

Plaintiffs provided a full summary of the allegations in Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement and for Leave to File Third Amended Complaint for Settlement Purposes, and Incorporated Memorandum of Law. (ECF No. 199.) The facts provided therein are incorporated here, and the following merely provides a brief background for the Court's convenience.

This Action involves Plaintiffs' claims that the "All Natural" statement on the Products is false, deceptive, misleading, and sold pursuant to an unfair business practice. On November 13, 2013, Plaintiffs filed in this Action in the United States District Court for the Southern District of

Florida. On November 10, 2014, the *Seidman* action was filed in the Southern District of Florida. On April 1, 2015, the currently pending, but stayed, *McDonough* action was filed in the Eastern District of New York. On June 10, 2015, the currently pending, but stayed, *Korn* action was filed in the Northern District of California. All Actions were filed by the same counsel representing the *Seidman* plaintiffs, brought on behalf of the named Plaintiffs and all others similarly situated, and involved overlapping facts and legal theories.

The Parties have engaged in substantial, extensive discovery, motion practice, and settlement negotiations. During discovery, the Parties exchanged and reviewed over 150,000 pages of documents. They conducted thirteen depositions, including four of the Class Representatives, Defendant's employees, and the Parties' experts. The Parties also briefed several motions to dismiss, class certification, summary judgment, and various pre-trial motions. (ECF Nos. 74, 156, 171, 168, 180-82.) The Parties' settlement negotiations were at arm's-length and significant. On March 13, 2015, the Parties attended a full day mediation conference with Court-appointed mediator Rodney A. Max. (ECF No. 139, Mediator's Interim Report to Court.) Although a settlement was not reached at that time, the Parties continued to engage in meaningful settlement discussions. On April 3, 2015, the Parties attended a second settlement conference with Mr. Max. Although the Parties did not reach a settlement at this conference, they continued to engage in on-going post-mediation discussions with the assistance of Mr. Max while continuing to vigorously litigate their claims. (*See* ECF No. 161, Mediator's Report to Court.) The Parties eventually negotiated a full settlement of the Actions, as evidenced by the Stipulation of Settlement.

## II.       The Settlement.

Plaintiffs allege that Defendant improperly labeled its Products as "All Natural," despite the fact that they allegedly contain genetically modified ingredients. (*See* ECF No. 199-1, Third

Am. Compl.) The Actions sought monetary and injunctive relief.  (*Id.*)

### a.      The Settlement Class.

The Settlement Class includes:

> all Persons who, for personal or household use, purchased the Products in the United States from November 13, 2007 through and including the Notice Date.  Excluded from the Settlement Class are: (a) all Persons who purchased or acquired the Products for resale; (b) Snyder's-Lance and its employees, principals, affiliated entities, legal representatives, successors, and assigns; (c) any Person who files a valid, timely Request for Exclusion; (d) federal, state, and local governments (including all agencies and subdivisions thereof, but excluding employees thereof); and (e) the judges to whom the Snyder's-Lance Actions are assigned and any members of their immediate families.

(ECF No. 199-2, Stipulation of Settlement ¶ 59.)

### b.      Snyder's-Lance Must Change the Labeling and Marketing of the Products.

The injunctive relief component of the Settlement requires Defendant to make prospective revisions to its advertising and marketing statements related to the Products that entirely addresses and resolves the allegations in the Third Amended Complaint. (ECF No. 199-2, Stipulation of Settlement § IV.B.) Specifically, within 365 calendar days after entry of the Final Judgment and Order Approving Settlement, and subject to certain limitations, the injunctive relief component requires Defendant to cease to advertise, market, or manufacture Products with Labeling bearing or including the statements "All Natural," "Natural," "Naturally," "All Natural Ingredients," or any other derivation of "natural" including "nothing artificial" and/or "no preservatives." (*Id.*) If Defendant chooses to resume using a Natural Label it shall ensure the Products are not made with ingredients derived from GMOs or GMO Crops.  (*Id.* § IV.C.)

### c.      Snyder's-Lance Must Contribute a Substantial Sum to a Settlement Fund to Compensate Those Persons Allegedly Harmed by its Allegedly Deceptive Labeling, Advertising, and Marketing Practices.

The monetary relief component of the Settlement is substantial and reasonable under the

circumstances. Pursuant to the Stipulation of Settlement, Defendant will provide compensation to Class Members who submit valid claims forms. (ECF No. 199-2, Stipulation of Settlement § IV.D.) Specifically, Defendant has agreed to provide compensation to Claimants, without proof of purchase, $1.00 per purchase of claimed Products, up to $10.00, for Products purchased during the Class Period.  (*Id.* § IV.D.1.) Defendant has also agreed to provide compensation to Claimants, who have proofs of purchase, $1.00 per purchase, up to a maximum of $20.00.  (*Id.* § IV.D.2.)

Defendant has guaranteed it will supply a Common Fund (totaling $2,762,500.00) that will be used to satisfy valid Claims. If the total of Approved Claims exceeds the cash benefit available in the Common Fund for the payment of Claims, the claims administrator will pay a pro rata reduction of the amount due each Settlement Class Member such that the aforementioned amount will satisfy all Approved Claims. (ECF No. 199-2, Stipulation of Settlement § IV.D.3.) Additionally, any Residual Amount, as that term was defined in the Stipulation of Settlement, will be applied toward the retail value of Defendant's food products, which Defendant shall donate to charity, namely, Feeding America.  (*Id.* § IV.D.4.) Such distribution will be made within eighteen (18) months following the Payment Distribution Date.  (*Id.*)

### d.  Defendant Agrees to Class Certification for Settlement Purposes Only.

Plaintiffs seek confirmation of certification of the Settlement Class pursuant to Federal Rule of civil Procedure 23 (a) and (b)(3), and Defendant agrees to certification of the Settlement Class for purposes of achieving settlement. Defendant has reserved all of its objections to class certification for litigation purposes and has reserved all rights to challenge certification of a class in this case in the event final approval of the Settlement does not occur.

### e.  Defendant Will Pay the Cost of the Notice and Claims Administration.

The Settlement Agreement provides that Defendant will pay $350,000.00 for cost of notice

and claims administration.  (ECF No. 199-2, Stipulation of Settlement § II.A.11.)

### f. Defendant Will Pay Plaintiffs' Incentive Awards and Court-Ordered Attorneys' Fees and Litigation Costs.

The Settlement Agreement provides that Class Counsel may apply for an award of Attorneys' Fees and Expenses not to exceed $890,000.00, and for Incentive Awards to Plaintiffs totaling $42,500.00.  (ECF No. 199-2, Stipulation of Settlement §§ II.A.22, II.A.27, X.A, X.C.) Defendant agrees not to oppose these applications. (ECF No. 199-2, Stipulation of Settlement §§ X.A., X.C.)

### III.        Notice to the Settlement Class.

The Notice Plan was implemented in accordance with the Court's Order Granting Preliminary Approval of Class Action Settlement, and Leave to File Third Amended Complaint, ECF. No. 202. The Notice Plan was developed using targeted methods universally employed in the advertising industry to ensure adequate reach to the Settlement Class Members based on how the public consume media in today's world.  (*See* Declaration of Steven Weisbrot ("Weisbrot Decl.,") filed concurrently herewith as **Exhibit "A."**)

On March 3, 2016, Angeion implemented a four-week desktop and mobile internet banner campaign, utilizing banner-style notices that was specifically targeted to reach potential Settlement Class Members. (Weisbrot Decl. ¶ 9.) The banner-style notices contained a link to the Settlement website at www.snackfoodsettlement.com. (*Id.*) The internet notice campaign resulted in 29,679,564 impressions. (*Id.*) Angeion also caused the Publication Notice to be published in the Legal Notice Section of the national edition of *USA Today*. (*Id.* ¶ 8.)

On March 3, 2016, the Settlement Website went live. (Weisbrot Decl. ¶ 11.) The settlement website contains general information about the Settlement, Court documents, including the Long-Form Notice, and important dates and deadlines pertinent to this Settlement. The settlement

website also has a "Contact Us" page whereby potential Settlement Class Members can send an email to a dedicated email address (SnackFoodSettlement@AngeionGroup.com) to update their address or submit additional questions regarding the Settlement. Settlement Class Members can also submit their Settlement Claims online via the settlement website. (*Id.* ¶ 11.)

In addition, on March 3, 2016, Angeion implemented a toll-free hotline devoted to this case. (Weisbrot Decl. ¶ 12.) The toll-free hotline utilizes an interactive voice response ("IVR") system to provide potential Settlement Class Members with responses to frequently asked questions and important information regarding the Settlement. (*Id.*) Potential Settlement Class Members also have the option to request Settlement Claim Form and/or Long-Form Notice through the toll-free hotline. (*Id.*)[1] The claims data reflects the success of the Notice Plan: as of April 13, 2016, 28,547 Settlement Class Members have submitted a Claim. (Weisbrot Decl. ¶ 14.[2])

## ARGUMENT

**I.      The Court Should Grant Final Approval of the Settlement.**

The Settlement is fair, adequate, and reasonable as it accomplishes the exact relief sought in the Action, in requiring Defendant to change its labeling and marketing practices and securing just compensation for the Settlement Class Members. The Settlement accomplishes this while

---

1.      Combining the internet banner-style notice campaign with traditional print media, the notice program delivered approximately a 70.1% reach with an average frequency of 3.0 times each. (Weisbrot Decl. ¶ 10.) The informational settlement website and toll-free telephone line, while not reflected in calculable reach figures, have further apprised potential Settlement Class Members of the rights and options in the Settlement. The details of the Notice Plan, including the methodology underlying its design, were explained in detail in the Declaration of Steven Weisbrot, Esq., On Adequacy Notice Plan, ECF No. 199-7, Ex. G. Use of the Internet and traditional methods of publication maximized the effect of the dollars spent to contact the Settlement Class Members. Publication through the Internet had the further advantage of immediately linking the reader to the Settlement Website and the Claim Form.

2.      Since the claims period is not completed, this data is preliminary and incomplete. Plaintiffs will provide the Court with updated claims data together with their reply papers.

avoiding both the uncertainty and the delay that would be associated with further litigation. It represents a fair compromise of the Parties' respective positions in the litigation and enables each Party to end the litigation, thus avoiding its costs and risks. Importantly, the Settlement provides Settlement Class Members with monetary relief they may not otherwise be entitled to if this case were litigated to its conclusion. Finally, the Settlement was reached through arm's-length negotiations as part of a supervised mediation process. Class Counsel, whom have significant experience in litigating class actions, support the Settlement as fair and providing reasonable relief to the Settlement Class Members.

### a.  The Applicable Legal Standard.

The approval of a proposed class action settlement is a matter within the Court's broad discretion and will not be overturned unless it "clearly abused its discretion in approving the settlement." *Young v. Katz*, 447 F.2d 431, 432 (5th Cir. 1971). In making this determination the Court should evaluate the settlement's fairness in its entirety. *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). Settlements of class actions prior to trial are strongly favored. *Nelson v. Mead Johnson & Johnson Co.*, 484 Fed. Appx. 429, 434 (11th Cir. 2012) ("[o]ur judgment is informed by the strong judicial policy favoring settlements as well as by the realization that compromise is the essence of settlement"); *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits").

On final approval, the Court considers whether the settlement is fair, adequate, and reasonable, and not the product of collusion between the parties. *Bennett*, 737 F.2d at 986; *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977). The court is "not called upon to determine whether the settlement reached by the parties is the best possible deal, nor whether class members will receive as much from a settlement as they might have recovered from victory at trial." *In re Mex.*

*Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1014 (N.D. Ill. 2000) (citations omitted); *Cotton*, 559 F.2d at 1330-31 ("In performing this balancing task, the trial court is entitled to rely upon the judgment of experienced counsel for the parties.  Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.") (citations omitted).  Rather, courts in the Eleventh Circuit evaluate the following factors in determining whether to approve a class action settlement:

> (1) the existence of fraud or collusion among the parties in reaching the settlement; (2) the complexity, expense, and duration of the litigation; (3) the stage of proceedings at which the settlement was achieved and the amount of discovery completed; (4) the probability of the plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of class counsel, the class representatives, and the substance and amount of opposition to the settlement.

*Wilson v. Everbank*, No. 14-CV-22264-BLOOM/VALLE, 2016 U.S. Dist. LEXIS 15751 (Feb. 3, 2016) (citing *Leverso v. S. Trust Bank of Ala., N.A.*, 18 F.3d 1527, 1530 n.6 (11th Cir. 1994)). Here, the proposed Settlement satisfies the standard for final approval.

### b.        There is no evidence of fraud or collusion.

The first factor outlined in *Wilson* is satisfied. "Where the parties have negotiated at arm's length, the Court should find that the settlement is not the product of collusion." *Saccoccio v. JPMorgan Chase Bank, N.A.*, 297 F.R.D. 683, 692 (S.D. Fla. 2014) (citing *Ass'n for Disabled Arms., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 470 (S.D. Fla. 2002)). Furthermore, "[t]here is a presumption of fairness when a proposed class settlement, which was negotiated at arm's-length by counsel for the class, is presented for Court approval." 4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 11.41 (4th ed. 2002); *see also Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1380 (S.D. Fla. 2007) ("the court 'must rely upon the judgment of experienced counsel and, absent fraud, should be hesitant to substitute its own judgment for that of counsel'"); *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 662 (S.D. Fla. 2011) (finding no collusion

where settlement was reached with capable and experienced counsel and with the assistance of a well-qualified and experienced mediator).

Here, the Parties' negotiations were conducted at arm's length over a substantial period of time, including two mediation sessions with court-appointed mediator Rodney Max, while the Parties continued to litigate the Action. (*See* Declaration of Melissa W. Wolchansky in Support of Final Approval ("Wolchansky Decl.") ¶¶ 19-20, attached hereto as **Exhibit "B."**)  Through the Parties' lengthy and comprehensive settlement discussions, and through substantial discovery, Defendant provided Plaintiffs with vital information pertaining to the legitimacy and scope of Plaintiffs' claims, including information regarding the Products' labeling and ingredients. (*Id.* ¶¶ 19-29.)  This exchange of information ensured sophisticated and meaningful settlement negotiations, which were conducted with the assistance of a neutral mediator, Mr. Max.  Mr. Max is a "well known mediator for class actions," is a "highly respected mediator," "one of the top mediators in Florida," and "probably one of the top mediators in the country." *Lee v. Ocwen Loan Servicing, LLC*, No. 14-CV-60649-GOODMAN, 2015 U.S. Dist. LEXIS 121998, at *33 (S.D. Fla. Sept. 14, 2015). Given that there is no evidence of fraud or collusion, this factor weighs in favor of final approval.

> **c.    The Actions involved complex claims that were litigated over a course of more than two years.**

The complexity, expense, and duration of the litigation all weigh in favor of final approval. In considering this factor, courts "should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." *Lipuma v. Amer. Express Co.*, 406 F. Supp. 2d 1298, 1323 (S.D. Fla. 2005) (citation omitted). "The law favors compromises in large part because they are often a speedy and efficient resolution of long, complex, and expensive

11

litigation." *Perez*, 501 F. Supp. 2d at 1381 (quoting *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 543, 543 (S.D. Fla. 1998)). Continuing to litigate this case would have resulted in expense of significant time, money, and judicial resources. *Wilson*, 2016 U.S. Dist. LEXIS 15751, at *24. "Complex litigation . . . can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive." *Id.* at *24-25 (quoting *In re U.S. Oil & Gas Litig.*, 967 F.2d at 493).

Litigating this class action through trial would undoubtedly be risky and expensive, while the results achieved may be no better than the terms reached by the Parties in the Settlement. As with most class actions, this litigation is complex. *Cotton*, 559 F.2d at 1331 ("class action suits have a well-deserved reputation as being most complex"). This is particularly true in this case, given the interplay of the consumer protection laws of multiple jurisdictions and the potentially preemptive effect of federal law. Determining whether Defendant engaged in unfair and deceptive acts and practice, and whether the Labeling on the Products was false and misleading would require additional expert expenses and extensive briefing by both Parties before the issues could be presented to a factfinder.  In fact, the Parties have engaged in significant motion practice, including dispositive motions. (*See* ECF Nos. 74, 156, 171, 168, 180-82.)

At a minimum, absent the Settlement, litigation would likely continue for years before Plaintiffs or the Settlement Class might see any recovery. That a settlement would eliminate the delay in obtaining a recovery and the expenses of litigation strongly weighs in favor of approval. *See Lipuma*, 406 F. Supp. 2d at 1323 (when additional costs and delay are likely to be incurred absent a settlement, "it [is] proper to take the bird in the hand instead of a prospective flock in the bush."). Given the complexity, expense, and duration of this litigation, the second factor weighs strongly in favor of final approval.

**d.    The Parties finalized a Stipulation of Settlement after over two years of litigation and completion of critical discovery.**

The stage of proceedings at which the settlement was achieved also supports final approval. The purpose of this factor is "to ensure that the plaintiffs have access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of the settlement against further litigation." *Perez*, 501 F. Supp. 2d at 1383; *Access Now, Inc. v. Claire's Stores, Inc.*, No. 00-14017-CIV-MOORE, 2002 U.S. Dist. LEXIS 28975 (May 7, 2002). "The law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations." *See Ressler v. Jacobson*, 822 F. Supp. 1551, 1555 (M.D. Fla. 1992).

Here, the Settlement was reached only after Class Counsel had extensively investigated the factual allegations giving rise to the Complaint; analyzed the substantial information and documents Defendant provided regarding its practices, including its advertising, labels, contents, and sales of the Products; took depositions; and engaged in extensive negotiations with Defendant over a substantial period of time. (Wolchansky Decl. ¶¶ 15-18.) Class Counsel ensured they had sufficient information necessary to meaningfully evaluate the strengths and weaknesses of the Settlement Class's claims to weigh the benefits of the Settlement. (*Id.*) Therefore, the state of proceedings at which the Settlement was reached weighs in favor of final approval.

**e.    The Parties faced risks had they proceeded with litigation.**

Both Parties faced significant risks had they proceeded with litigation. Given the alternative of long and complex litigation before this Court (and other courts), the risks involved in such litigation, and the possibility of further appellate litigation, the availability of prompt relief under the Settlement is also highly beneficial to the Class Members. *See Perez*, 501 F. Supp. 2d at 1381 ("With the uncertainties inherent in pursuing trial and appeal of this case, combined with the delays

13

and complexities presented by the nature of the case, the benefits of a settlement are clear.").
Plaintiffs might have recovered nothing for themselves or the Class had they proceeded with
litigation. (Wolchansky Decl. ¶ 32.) Defendant faced the possibility of Plaintiffs winning at trial
and recovering far more than what Defendant is paying pursuant to the settlement. (*Id.* ¶ 31.)
Therefore, given the inherent risks in continued litigation, this factor weighs in favor of final
approval.

### f.    The Settlement provides meaningful injunctive and monetary relief.

The proposed Settlement is fair, reasonable, and adequate when compared to the possible
range of recovery. As in most litigation, "[t]he range of potential recovery 'spans from a finding
of non-liability through varying levels of injunctive relief,' in addition to any monetary benefits to
class members." *Figueroa v. Sharper Image Co.*, 517 F. Supp. 2d 1292, 1326 (S.D. Fla. 2007)
(quoting *Lipuma*, 406 F. Supp. 2d at 1322). When considering the question of a possible recovery,
the focus is on the possible recovery at trial.  *In re Corrugated Container Antitrust Litig.*, 643 F.2d
at 212. However, "[a] settlement can be satisfying even if it amounts to a hundredth or even a
thousandth of single percent of the potential recovery." *Behrens*, 118 F.R.D. at 542; *see also*
*Bennett*, 737 F.2d at 986 (where range of possible recovery is zero to $12,000,000, a settlement
fund of $675,000.00 (or 5.6%) is a fair and adequate sum in view of the risks of further litigation
and the fact that damages are not the primary goal of this lawsuit); "[T]he Court's role is not to
engage in a claim-by-claim, dollar-by-dollar evaluation, but rather, to evaluate the proposed
settlement in its totality." *Figueroa*, 517 F. Supp. 2d at 1326. "Moreover, the existence of strong
defenses to the claims presented makes the possibility of a low recovery quite reasonable."
*Lipuma*, 406 F. Supp. 2d at 1323 (citing *Bennett*, 737 F.2d at 986)).  Furthermore, courts consider
the value of both injunctive and monetary relief in evaluating whether a settlement provides

sufficient relief to the class. *Wilson*, 2016 U.S. Dist. LEXIS 15751, at *35-36 (citing *Poertner v. Gillette Co.*, 618 F. App'x 624, 630 (11th Cir. 2015)).

The proposed Settlement is fair, reasonable, and adequate because it squarely addresses and resolves the issues raised by Plaintiffs in this litigation by providing monetary compensation to Settlement Class Members and injunctive relief. (Wolchansky Decl. ¶ 30.) Under the Settlement, Class Members who are not able to produce proof of purchase can receive up to $10.00, representing compensation for up to ten purchases of the Products. (ECF No. 199-2, Stipulation of Settlement § IV.D.)  Consumers with proof of purchase can receive up to $20.00, representing $1.00 for compensation for up to twenty purchases of the Products.  (*Id.*) Additionally, Defendant will be required to implement concrete labeling and advertising changes regarding the Products, as well as pay for the costs of notice and administration.  (*Id.* §§ IV.B, II.A.11.) These are meaningful benefits to the Settlement Class.  *See Lipuma*, 406 F. Supp. 2d at 1323 (approving settlement providing monetary payments and injunctive relief).

Moreover, by reaching this Settlement the Parties have established a means for prompt resolution of the claims against Defendant, while avoiding protracted and expensive litigation that could lead to little or no recovery at all. (Wolchansky Decl. ¶ 32.) Given the clarification of the labels through the agreed-upon injunctive relief, as well as monetary relief, the Settlement provides substantial benefits to the Class while avoiding the risk and expense of further litigation.  (*Id.* ¶ 30.) Thus, this factor weighs in favor of final approval.

>    **g.**     **There is no opposition from members of the Settlement Class and Class Counsel and the class representatives support the Settlement.**

There is no opposition from class members and Class Counsel and the class representatives support the Settlement. The overwhelmingly positive response from absent Class members further confirms the Settlement is fair. To date, no Settlement Class Members have objected or opted-

out.[3]  (Weisbrot Decl. ¶¶ 15-16.) The fact that there have been no objections demonstrates that Class Members find the Settlement reasonable and fair, which strongly favors approval.  *See Lipuma*, 406 F. Supp. 2d at 1324 ("a low percentage of objections points to the reasonableness of a proposed settlement and supports its approval."); *Allapattah Servs., Inc. v. Exxon Corp.*, No. 91-cv-986, 2006 U.S. Dist. LEXIS 88347, at *44 (S.D. Fla. Apr. 7, 2006) ("I infer from [the] absence of a significant number of objections that the majority of the Class found [the settlement agreement] reasonable and fair.").

Also, Class Counsel and the class representatives advocate for final approval. Class Counsel's opinion is based on their significant experience with consumer class action litigation. Class Counsel's reputation, diligence, ability, expertise, and skill is reflected in the significant results achieved on behalf of their clients.  (*See* Wolchansky Decl. ¶ 34.) As a testament to the efficiency, skill, and expertise of Class Counsel's efforts, these Actions were resolved with substantial and meaningful results provided to the Settlement Class.  Furthermore, this Court found that Class Counsel "are competent and capable of exercising their responsibilities as Class Counsel."  (ECF No. 202, Order Granting Preliminary Approval of Class Action Settlement, and Leave to File Third Am. Compl. ("Approval Order"))

Furthermore, the opinions of Class Counsel strongly favor approval of the Settlement. Courts give "great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation."  *Warren v. City of Tampa*, 693 F. Supp. 1051, 1060 (M.D. Fla. 1988); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 312-13 (N.D.

---

3.    The deadline for objections and requests for exclusions is May 3, 2016.  If timely objections or requests for exclusions are received, Plaintiffs will file supplemental briefing on or before the Court's May 27, 2016, deadline for submitting supplemental briefs to address any objections filed by Settlement Class Members.

Ga. 1993) ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel.  The trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." (internal quotations omitted)). Here Class Counsel deem the Settlement to be fair and equitable to the Settlement Class. (Wolchansky Decl. ¶ 30.) Given that there has been no opposition to the Settlement and Class Counsel and the class representative support the settlement, this factor weighs in favor of final approval.

Because all of the applicable factors support a finding the settlement is "fair, reasonable, and adequate" pursuant to FED. R. CIV. P. 23(e)(2), the Court should finally approve the Settlement.

**II.        The Court Should Confirm Certification of the Settlement Class.**

For settlement purposes only, Plaintiffs request that the Court confirm the certification of the Settlement Class pursuant to Rule 23 of the Federal Rules of Civil Procedure. The Settlement Class is defined as:

> All Persons who, for personal or household use, purchased Snyder's-Lance's Snyder's of Hanover® Pretzels, Snyder's of Hanover® Chips, Cape Cod® Potato Chips, Eatsmart Naturals® Snacks, Padrino's® Chips and Snack Factory Pretzel Crisps® products bearing, or advertised or marketed with, a Natural Label,[4] in the United States from November 13, 2007 through and including the Notice Date, as defined in the Agreement.  Excluded from the Settlement Class are: (a) all Persons who purchased or acquired the Products for resale; (b) Snyder's-Lance and its employees, principals, affiliated entities, legal representatives, successors, and assigns; (c) any Person who files a valid, timely Request for Exclusion; (d) federal, state, and local governments (including all agencies and subdivisions thereof, but excluding employees thereof); and (e) the judges to whom the Snyder's-Lance Actions are assigned and any members of their immediate families.

(Approval Order ¶ 2.)  As discussed below, the Settlement Class satisfies all of the Rule

---

4.      "Natural Label" means Labeling as "All Natural," "Natural," "Naturally," "All Natural Ingredients," and any other derivation of "natural," including "nothing artificial" and/or "no preservatives."

23 certification requirements.

### a.     The Criteria for Class Certification under Rule 23(a) are Satisfied.

To justify class certification under Rule 23(a), Plaintiffs must show: (1) the class is so numerous that joinder is impracticable; (2) questions of law or fact are common to the class; (3) the claims of the representative plaintiffs are typical of the claims of the class; and (4) the class representatives will fairly and adequately protect the interests of the class.  FED. R. CIV. P. 23(a). Each of these criteria is satisfied here.  Furthermore, the Eleventh Circuit recognizes the strong public policy favoring the pretrial settlement of class action lawsuits.  *See In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992).

### i.     Joinder of All Members is Impracticable.

A class must be "so numerous that joinder of all members is impracticable."  FED. R. CIV. P. 23(a)(1). The Eleventh Circuit has held that generally more than forty class members is adequate to satisfy this requirement.  *Sharf v. Fin. Asset Resolution, L.L.C.*, 295 F.R.D. 664, 668-69 (S.D. Fla. 2014).  Based on the information produced in discovery in this case, the number of consumers nationwide who purchased the Products during the class period is likely in the millions.  (*See, e.g.,* ECF No. 74-1, Granade Decl. Ex. G, at SLI00026616.)  Furthermore, 28,547 individuals have already made claims pursuant to this settlement. (Weisbrot Decl. ¶ 14.)  Therefore, the Class satisfies Rule 23(a)(1).

### ii.     Common Issues of Law and Fact Exist.

The commonality requirement is met if there is at least one question of law or fact common to the members of the Class. FED. R. CIV. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury'" that "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity

will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 n.6. This is a "relatively light burden" that requires "there be at least one issue whose resolution will affect all or a significant number of the putative class members." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1268 (11th Cir. 2009); *Williams v. Mohawk Indus.*, 568 F.3d 1350, 1355 (11th Cir. 2009) (quoting *Stewart v. Winter*, 669 F.2d 328, 335 (5th Cir. 1982)).

Here, the central issue in this case is whether the Products were "All Natural" despite containing GMOs.  (*See* ECF No. 119-1, Third Am. Compl. ¶¶ 114-21.) Furthermore, Plaintiffs' claims involve the Labeling of Defendant's Products, which was standardized among the Products at issue, and whether the Labeling was false and misleading. Because the Court may resolve these issues of fact and law in one stroke, the Class satisfies the commonality requirement. *See Forcellati v. Hyland's, Inc.*, No. 12-CV-1983-GHK, 2014 U.S. Dist. LEXIS 50600, at *30 (C.D. Cal. Apr. 9, 2014).

### iii.      The Class Representatives' Claims Are Typical of the Settlement Class Claims.

The typicality requirement ensures that the Class Representatives have the same interests as the class. Class Representatives' claims must bear the same essential characteristics as the claims of the class at large. *Jacobs v. Osmose, Inc.*, 213 F.R.D. 607, 613 (S.D. Fla. 2003).  Like commonality, the typicality requirement is not demanding. *See In re Disposable Contact Lens Antitrust Litig.*, 170 F.R.D. 524, 532 (M.D. Fla. 1996). Therefore, "a strong similarity of legal theories will satisfy the typicality requirement despite substantial factual differences." *Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985).

In this case, the Class Representatives' claims involve allegations of false, misleading, and deceptive representations and omissions. Each of the Class Representatives were exposed to the

"All Natural" claim which was displayed on the Products' packaging, and they allege these claims were a material factor in their decision to purchase the Products. The Class Representatives' claims are identical to the Class Members' claims because, like the Class Members, they would not have paid for the Products had they known the truth. Therefore, the typicality requirement of Rule 23(a)(3) is met.

### iv.     The Class Representatives and their Counsel Have Adequately Represented the Class.

Rule 23(a)(4) requires a showing that the representative parties will fairly and adequately protect the interests of the class. FED. R. CIV. P. 23(a)(4). Class representation is generally adequate when (1) counsel is qualified, experienced, and will competently and vigorously prosecute the action, and (2) the named plaintiffs' interests are not in conflict with those of the class. *See Walco Invs. V. Thenen*, 168 F.R.D. 315, 327 (S.D. Fla. 1996).

Here, Class Counsel are qualified, experienced, and have competently and vigorously prosecuted this action. (*See generally* Wolchansky Decl.) In fact, this Court has already recognized that Class Counsel "are competent and capable of exercising their responsibilities as Class Counsel."  (ECF No. 202, Approval Order ¶ 4.) Class Counsel have significant experience in complex consumer class actions, have served as lead counsel in other class actions, and have a proven track record of successful prosecution of significant class actions. (Wolchansky Decl. ¶ 34.) *See also* Decl. Eggnatz Supp. Pls.' Mot. Prelim. Approval Settlement, ECF No. 199-4 (attaching firm resume of Eggnatz, Lopatin & Pascucci, LLP); Decl. Wolchansky Supp. Pls.' Mot. Prelim. Approval Settlement, ECF No. 199-5 (attaching firm resume of Halunen Law); Decl. Reese Supp. Pls.' Mot. Prelim. Approval Settlement, ECF No. 199-6 (attaching firm resume of Reese LLP).)

Furthermore, there is no conflict between the Class representatives' interests and those of

20

the class.  Rather, each of the representatives have been committed to the vigorous prosecution of the Actions and retained competent counsel experienced in litigation of this nature.  (ECF No. 199-1, Third Am. Compl. ¶ 158.) They have strong incentives to protect the interests of the absent Class members because their claims and the claims of the absent Class members arise from identical conduct by Defendant and they assert the same legal claims concerning Defendant's marketing of the Products as "All Natural."  (*Id.* ¶¶ 155-57.)  Additionally, the Court has approved the named Plaintiffs as Class Representatives. (ECF No. 202, Approval Order ¶ 3.) Therefore, the adequacy requirement is met.

### b.      The Settlement Class Meets the Requirements of Rule 23(b)(3).

In addition to the requirements set forth in Rule 23(a), Plaintiffs must also satisfy the requirements set forth in Rule 23(b)(3). Specifically, Rule 23(b)(3) requires that common questions of law or fact predominate over individual questions and that class action treatment is superior to other available methods of adjudication.  FED. R. CIV. P. 23(b)(3).

### i.      Common Questions of Law and Fact Predominate Over Individualized Issues.

Rule 23(b)(3) requires that questions of law or fact common to the class must predominate over questions affecting individual members.  Common questions of law or fact predominate over individual questions when the issues in the class action are subject to generalized proof that applies to the case as a whole.  *Rutstein v. Avis Rent-A-Car Sys.*, 211 F.3d 1228, 1233 (11th Cir. 2000). "[I]t is not necessary that all questions of fact or law be common, but only that some questions are common that they predominate over individual questions." *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1354 (11th Cir. 2008).

Here, common questions of law and fact predominate over individual inquiries with respect to liability and damages. The Class representatives and the Class members were all subjected to

identical representations on the Product Labeling that the Products were "All Natural." Therefore, the central issue for every Class member is whether Defendant's claims that the Products were "All Natural" was likely to deceive a reasonable consumer. With regard to damages, "numerous courts have recognized that the presence of individualized damages issues does not prevent a finding that the common issues in the case predominate." *Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003), *aff'd sub nom. Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546 (2005). Individualized damages issues do not predominate in this settlement class, in which the primary issues of liability is whether a reasonable consumer would have been deceived by a misrepresentation on Defendant's Products. *See Moore v. GNC Holdings, Inc.*, No. 0:12-cv-61703-WPD (S.D. Fla. Oct. 17, 2013) (ECF No. 74-1, Granade Decl. Ex. K). Therefore, the predominance requirement is satisfied.

### ii.      A Class Action is the Superior Method to Settle this Controversy.

A class action is also the superior method of adjudicating this dispute. In determining whether a class action is superior, courts consider (A) the class members' interests individually controlling the prosecution or defense of separate actions, (B) the extent and nature of any litigation concerning the controversy already commenced by or against class members, (C) the desirability or undesirability of concentrating the litigation of the claims in a particular forum, and (D) the likely difficulties in managing a class action. FED. R. CIV. P. 23(b)(3). "[T]he improbability that large numbers of class members would possess the initiative to litigate individually" further compels a finding of superiority. *Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 318 (S.D. Fla. 2001).

Here, a class action is the superior method of adjudicating this controversy. There are thousands of class members whose claims all raise the same issues of law and fact. No one Class

Member has any particular unique reason to individually control the prosecution of his or her case. The threat of inconsistent adjudication will be permanently avoided if the Class is certified. Yet if the Class is not certified and individual consumers are left to pursue their own remedies, the alleged conduct will go unaddressed or, alternatively, multiple suits will be brought in various jurisdictions with a concomitant threat of inconsistent adjudications. A settlement class action will not be difficult to manage. The Parties have already demonstrated that the Actions could be litigated and settled on a class basis. Class Counsel was able to ascertain and organize the necessary information regarding Class members such that they were able to evaluate this case and reach a compromise with Defendant.  Therefore, the Class should be certified under Rule 23.

### III.      The Class Notice Satisfies the Requirements of Rule 23 and Due Process.

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class member who would be bound by a proposed settlement, voluntary dismissal, or compromise' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." Manual for Complex Litig. § 21.312.  The Settlement Agreement provides for notice that satisfies Rule 23 and due process considerations.

### a.      The Method of Notice is Appropriate.

"For any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." FED. R. CIV. P. 23(c)(2)(B). This requires that the means employed to distribute notice must be reasonable calculated to apprise the class of the pendency of the action, of the proposed settlement, and of the Class Members' rights to opt out or object. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974); *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950). The mechanics of the notice process are left to the

discretion of the court, subject only to the broad "reasonableness" standards imposed by due process. A notice is considered satisfactory if it reaches the parties affected and conveys the required information. *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1104-05 (5th Cir. 1977).

As detailed in Weisbot's Declaration, the Settlement Administrator provided notice to the Class via four methods: (1) using a web-based notice campaign with banner-style notices on targeted websites with a link to a Settlement Website; (2) publishing a summary notice in *USA Today*; (3) establishing a toll-free Settlement helpline; and (4) creating a Settlement website. (*See* Weisbrot Decl. ¶¶ 8-13.)

This Court approved the notice and found that "the notice to be given constitutes the best notice practicable under the circumstances, and constitutes valid, due, and sufficient notice to the Settlement Class in full compliance with the requirements of applicable law, including the Due Process Clause of the United States Constitution. (ECF No. 202, Approval Order ¶ 7.)

Courts routinely find similarly comprehensive notice programs meet the requirements of due process and Rule 23. *See, e.g.*, *In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 836 (W.D. Pa. 1995); *Gaudin v. Saxon Mortg. Servs.*, No. 11-cv-01663-JST, 2015 U.S. Dist. LEXIS 95720, at *19-20 (N.D. Cal. July 21, 2015). Therefore, the method used to provide notice to the Settlement Class Members was reasonable and practicable under the circumstances and should be approved.

### b.    The Contents of the Notice Are Adequate.

The contents of the notice are also adequate. The Class Notice provides Class Members with sufficient information to make an informed and intelligent decision whether to participate in the Settlement. Specifically, the notices defined the Settlement Class, explained all Settlement Class Member rights, releases, and applicable deadlines, and described in detail the injunctive and

24

monetary terms of the settlement, including the procedures for allocating and distributing Settlement Funds. They plainly indicated the time and place of the hearing to consider approval of the Settlement, the ability to appear through individual counsel, and the method for objecting to or opting out of the Settlement. Finally, the notices detailed the provisions for payment of attorneys' fees and incentive awards to the class representatives, as well as provided contact information for Class Counsel. (*See* Weisbrot Decl., Ex. E.)

In *In re Prudential Insurance Company of America Sales Practices Litigation*, 962 F. Supp. 450 (D.N.J. 1997), the court held that where the notice indicated the nature of the pending litigation, that any class member may opt out, that any class member who declines to opt out will be bound by final judgment, the general terms of the settlement, that complete information is available in the court files, and that any class member may appear and be heard at the hearing it satisfied the notice requirements. *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. at 528.  All of these elements are included in the notice that was disseminated to the Settlement Class Members here.  (*See* Weisbrot Decl., Ex. E.)

Furthermore, the content of the notice in this case comports with settlement notices upheld in other cases.  *See, e.g.*, *In re Wells Fargo Loan Processor Overtime Pay Litig.*, No. C-07-1841, 2011 U.S. Dist. LEXIS 84541, at *13 (N.D. Cal. Aug. 2, 2011); *see also Rodriguez v. West Publishing Corp.*, 563 F.2d 948, 962-63 (9th Cir. 2009).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court grant final approval of the Settlement, confirm certification of the Settlement Class, and enter an Order and Final Judgment in this action, which is attached hereto as **Exhibit "C."**

## LOCAL RULE 7.1(a)(3) CERTIFICATION

Pursuant to Local Rule 7.1(a)(3) of the Local Rules of the United States District Court for the Southern District of Florida, the undersigned certifies that Class Counsel has conferred with Defendant's Counsel, and Defendant does not oppose the relief Plaintiffs request in this Motion.

Date: April 15, 2016                          Respectfully submitted,

*/s/ Joshua H. Eggnatz*
Joshua H. Eggnatz
**EGGNATZ, LOPATIN & PASCUCCI, LLP**
54000 S. University Drive, Suite 413
Davie, Florida 33328
Telephone: (954) 889-3359
Facsimile: (954) 889-5913
Email: JEggnatz@ELPLawyers.com

Michael R. Reese (admitted *pro hac vice*)
George V. Granade II (admitted *pro hac vice*)
**REESE LLP**
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272
Email:  *mreese@reeserichman.com*
          *ggranade@reeserichman.com*

Melissa Wolchansky (admitted *pro hac vice*)
**HALUNEN LAW**
1650 IDS Center
80 South Eighth Street
Minneapolis, Minnesota  55402
Telephone: (612) 605-4098
Facsimile: (612) 605-4099
Email: *wolchansky@halunenlaw.com*

*Counsel for Plaintiffs and the Proposed Class*

## CERTIFICATE OF SERVICE

The undersigned certifies that on April 15, 2016, the foregoing was conventionally filed with the Clerk of the Court and was served by email on all counsel on the Service List below, pursuant to the parties' agreement to accept service via email.

*/s/ Joshua H. Eggnatz*
Joshua H. Eggnatz

**SERVICE LIST**
*Barron v. Snyder's-Lance, Inc.*
No. 0:13-cv-62496-JAL
United States District Court for the Southern District of Florida

Benjamin M. Lopatin (admitted *pro hac vice*)
**EGGNATZ, LOPATIN & PASCUCCI, LLP**
580 California Street, Suite 1200
San Francisco, California  94104
Telephone: (415) 324-8620
Facsimile: (415) 520-2262
Email: BLopatin@ELPLawyers.com


Michael R. Reese (admitted *pro hac vice*)
George V. Granade II (admitted *pro hac vice*)
**REESE LLP**
875 Avenue of the Americas, 18th Floor
New York, New York  10001
Telephone: (212) 643-0500
Facsimile: (212) 253-4272
Email:  *mreese@reeserichman.com*
        *ggranade@reeserichman.com*


Melissa Wolchansky (admitted *pro hac vice*)
**HALUNEN LAW**
1650 IDS Center
80 South Eighth Street
Minneapolis, Minnesota  55402
Telephone: (612) 605-4098
Facsimile: (612) 605-4099
Email: *wolchansky@halunenlaw.com*


Howard Weil Rubinstein
**THE LAW OFFICES OF
HOWARD W. RUBINSTEIN, P.A.**
3507 Kyoto Gardens Drive, Suite 200
Palm Beach Gardens, FL 33401
Telephone: (832) 715-2788
Facsimile: (415) 692-6607
Email: *howardr@pdq.net*


Kiran H. Mehta
**TROUTMAN SANDERS LLP**
301 South College Street, Suite 3400
Charlotte, NC 28202
Telephone: (704) 998-4072
Facsimile: (704) 998-4051
Email: *Kiran.mehta@troutmansanders.com*


Matthew G. Ball (admitted *pro hac vice*)
**K&L GATES, LLP**
4 Embarcadero Center, Suite 1200
San Francisco, CA 94111
Telephone: (415) 249-1014
Facsimile: (415) 882-8220
Email: *matthew.ball@klgates.com*


April Lynn Boyer
Jonathan Bart Morton
Olivia Rae Waters Kelman
**K&L GATES, LLP**
Southeast Financial Center
200 South Biscayne Boulevard, Suite 3900
Miami, FL 33131-2399
Telephone: (305) 539-3300
Facsimile: (305) 358-7095
Email: *april.boyer@klgates.com*
*jonathan.morton@klgates.com*
*olivia.kelman@klgates.com*

27